# ORIGINAL

ARTHUR E. ROSS, Esq.
126 Queen Street, Suite 210
Honolulu, Hawaii 96813
Telephone (808) 521 - 4343
Attorney for Plaintiff
CRAIG ELMER CHAPMAN

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 0 3 2007

at __2_ o'clock and 35 min. P_ M.
SUE BEITIA, CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| CRAIG ELMER ("OWL") CHAPMAN, )<br>Plaintiff, )<br>vs. )<br>JOURNAL CONCEPTS, INC., A )<br>CALIFORNIA CORPORATION, D.B.A. )<br>THE SURFER'S JOURNAL; JEFF )<br>JOHNSON; STEVE PEZMAN; DEBEE )<br>PEZMAN; and DAN MILNOR, )<br>Defendants. )<br>_____ ) | CIVIL NO. 0 7 - 0 0 0 2 **JMS** LEK<br>COMPLAINT FOR DAMAGES;<br>EXHIBIT "1"; DEMAND FOR<br>JURY TRIAL; SUMMONS |

## COMPLAINT FOR DAMAGES

Plaintiff, CRAIG ELMER ("OWL") CHAPMAN, by and through his attorney

undersigned, for his complaint against Defendants, JOURNAL CONCEPTS, INC.,

a California Corporation, D.B.A. "THE SURFER'S JOURNAL"; JEFF JOHNSON;

STEVE PEZMAN; DEBEE PEZMAN; and DAN MILNOR, alleges and avers as

follows:

*1*

## Jurisdiction and Parties

1.  Jurisdiction of this court is invoked pursuant to the provisions of
    28 USCS §§ 1331, 1332, and 1343, and 42 USCS §§ 1985 and 1986.

2.  The matter in controversy exceeds $75, 000.00 (seventy five
    thousand dollars), exclusive of interest and costs.

3.  Venue is proper in this district, where the claim arose, pursuant to
    U.S.C. § 1391A.

4.  Plaintiff, CRAIG ELMER ("OWL") CHAPMAN, is a resident of the
    State of Hawai'i, residing in the City of Haleiwa ("Sunset Beach"),
    County of Honolulu, State of Hawai'i.

5.  Defendant, JOURNAL CONCEPTS, INC. d.b.a. "THE SURFER'S
    JOURNAL" (*TSJ*), is a corporation duly organized and existing under
    the laws of the State of California, with its principal place of business
    located at 191 Avenida La Pata, in the City of San Clemente, County
    of Orange, State of California.

6.  Defendants STEVE PEZMAN & DEBEE PEZMAN (publishers); JEFF

JOHNSON (author); and DAN MILNOR (photographer) are
residents of the State of California and may be served with process
at 191 Avenida La Pata, in the City of San Clemente, County of
Orange, State of California.

## Facts

7.  Defendants, and each of them, by acts and omissions, committed
    willful and malicious misconduct within and without the State of
    Hawai'i with conscious indifference to consequences in both a
    reckless disregard of and an extreme departure from the standards
    of investigation and reporting ordinarily adhered to by responsible
    publishers, and, therefore, caused grievous injury to plaintiff.

8.  At the time of such injury, products, materials and things created,
    written, published, processed, serviced, and manufactured by
    defendants were used and consumed within the State of Hawai'i in
    the ordinary course of trade and use.

9.  At all times mentioned herein, plaintiff was and remains a private
    individual engaged in the business of building/shaping surfboards, with
    no interest or desire for unwarranted publicity.

10. At all times cited herein, Defendants Steve Pezman & Debee Pezman, were and remain the owners and publishers of a bimonthly journal magazine known as "The Surfer's Journal" or "TSJ."

11. At all times mentioned herein, Defendant, Journal Concepts, Inc. d.b.a. "The Surfer's Journal" (*TSJ*) was and remains widely circulated to the general public throughout the United States, including Hawai'i, and abroad.

12. "The Surfer's Journal" (*TSJ*) is a self-styled highbrow, glossy publication geared toward a mature and "sophisticated" adult readership. Further, *TSJ* is a known commercial success and enjoys unparalleled authoritative national and international prestige.

13. On or about August - September 2006, an egregiously defamatory and invasive article entitled "El Hombre Invisible: The Trials of an Owl Chapman board order" (*alternate title*: "El Hombre Invisible (With apologies to William S. Burroughs): An Owl Chapman Story") was published in the "August September 2006" issue of "The Surfer's Journal" (Vol. 15, No. 4).

14.   Defendant, Jeff Johnson, was the author of the defamatory and invasive article which is the subject of this complaint.

15.   Defendant, Dan Milnor, was the photographer credited for the unauthorized photographs that accompany the article under review.

16.   Defendant, Steve Pezman (publisher), was the author of the defamatory, disparaging, and private (i.e., invasive) references made about or regarding plaintiff in the TSJ issue subject of this complaint, specifically on page 1 and on page 128.

17.   A copy of the article (pp. 110 -119) under review; including also the magazine's cover page; page "ONE" (1) note(s); and "Liner Notes," p. 128) with plaintiff's name and picture (i.e., photographs) is attached as Exhibit "1" (one) and made part of this complaint.

## FIRST CAUSE OF ACTION

## (DEFAMATION - LIBEL PER SE)

18.   Plaintiff repeats and realleges the facts and allegations contained in Paragraphs 1 - 17 above and incorporates the same as if set forth fully herein.

19. The article(s) mentioned above and the subject of this complaint involve disparaging and defamatory references to Plaintiff which attribute numerous inaccurate and/or false quotations to him, in addition to other reckless falsehoods such that depict the Plaintiff as unscrupulous and deceitful, outrageous and diseased, and involve statements impugning the quality of the Plaintiff's product or service, where publication imputes gross misconduct in Plaintiff's trade such that holds him up to scorn and ridicule and to feelings of contempt or execration; impairs Plaintiff in the enjoyment of society; and injures those imperfect rights of friendly intercourse and mutual benevolence which a citizen has with respect to another citizen.

20. Defendants' unauthorized use of Plaintiff's name and picture and business logo included publication of inaccurate and false quotations which were and are false, and, further, were known by Defendants to be either inaccurate and false when published—and were, therefore, published by Defendants with malice and deliberate intent to injure Plaintiff's reputation and professional standing in violation of Hawai'i and U.S. law.

21. Moreover, the publication of the article(s) under review in this

complaint, which the Defendants distributed to the general public, imputes in explicit and sensational terms that Plaintiff is a member of an unscrupulous, dishonest, and loathsome class of so-called "single fin" surfboard shapers involved in criminal and otherwise reprehensible behavior. Publication of such exaggerated, misleading, and injurious information places Plaintiff's personal and professional reputation in a false and opprobrious light before the general public.

22. The foregoing and following facts outlined above and below and described herein demonstrate that Defendants, and each of them, acted with a *reckless disregard for the truth*—negligently, and in breach or violation of professional journalists' and publishers' widely recognized and long established and accepted codes and standards of ethics and protocol—thus making a clear and convincing showing of Defendants highly unreasonable conduct constituting an extreme departure from the standards of investigation, reporting, and publishing ordinarily adhered to by responsible publishers.

23. Defamatory falsehoods, distortions and errors of fact (cited in part above) include, but are not limited to, the following assertions:

    (a)   By implication and innuendo Defendants impute that the Plaintiff is destitute, devious, and addicted to drugs,

and thereby portray Plaintiff as both sinister and derelict, and also in desperate need of money and illegal drugs.

(b)    Further, Defendants associate, implicate, or otherwise identify Plaintiff with a nefarious group of social outcasts (e.g., drunkards/alcoholics; social failures; fugitives) who, according to Defendant (Johnson), are the only people who "know how to shape" a "single fin gun."

(c)    During the course of the article mentioned above in combination with other direct and indirect references made throughout the Vol. 15, No. 4 August-September 2006 Issue of *TSJ*, a ridiculously extreme portrait (indeed a most sinister caricature) of Plaintiff emerges that casts him in a false light—and which, further, points to a grandiose egotist who is mean-spirited, self-serving, full of braggadocio, impossibly arrogant and, in the end, a degenerate, pathetic, and drug addled social outcast.

(d)    Defendants impute that Plaintiff has only been "sober for one year out of 40" while "living in a Hawaiian time warp"; "always doing outrageous stuff"; and describe Plaintiff as an "iconoclast holdout [who] survive[s]

8

beyond the fringes[.]"

(e)    Defendants attribute at least 30 (thirty) separate <u>inaccurate and false quotations to Plaintiff</u>, some of which place plaintiff in disgrace and expose him to ridicule, scorn, and contempt from his peers, neighbors, friends and family, and potential future customers.

(f)    Moreover, Defendants attribute extremely slanderous (and patently false) quotations to Plaintiff, including other intentional and reckless alterations, wherein false impression portrays Plaintiff as maligning the name, character, and reputation of a well-known and widely admired public figure (i.e., past and current world champion surfer Kelly Slater) in an obscene manner that invites contempt and ridicule from right thinking people; holds Plaintiff up to further scorn and ridicule and to feelings of contempt or execration; also impairs plaintiff's reputation and in his enjoyment of society; and injures those imperfect rights of friendly intercourse and mutual benevolence which Plaintiff has with respect to other people—*precisely* those people in the surfing community (the specific demographic in which plaintiff's

9

reputation as a shaper relies, and the community to
which he is related) which Plaintiff depends upon in
order to practice his trade and survive.

(g)     Defendants' discussion of Plaintiff's professional activity
involves other numerous false, defamatory, and highly
disparaging statements impugning the quality of a
plaintiff's product or service.

(h)     Defendants impute (falsely) that Plaintiff was physically
assaulted and beat up by another surfer in the waters of
Sunset Beach "sometime in the mid-90s"—imputing also
that Plaintiff himself is a troublemaker and instigated the
altercation described.

(i)      By other explicit statements, implication, and innuendo,
Defendants cast Plaintiff in a sinister, opprobrious, and
false light such that imputes professional, as well as
personal, misconduct in such a way that gives evidence
of defendants' malice, negligence, misconduct and
unwarranted, wanton hostility toward the Plaintiff.

(j)     Defendants attribute extremely pejorative adjectives—
including, but not limited to, the following
representations, such as "outrageous"; "condescending";
"eccentric"; "bizarre"; "stoner"; "blind"; "extreme";

"outspoken"; "strange"; "iconoclast"; "nervous"; "hardened"; "monster," etc.—to describe the person and character of Plaintiff whose substance, taken together (with other disparagements of Plaintiff's trade professional conduct) and considered broadly within the context of both the article, "Liner Notes," and other references made explicitly or by implication or innuendo throughout the magazine in question are highly offensive and give a spurious and false impression of Plaintiff that directly and indirectly harms his personal and professional reputation and intentionally disparages and impairs his trade.

(k)    Numerous other errors of fact are contained in the above-mentioned article which, upon close examination, prove false, disparaging, and cast Plaintiff's name and reputation in a false light.

(l)    For example, Defendant (Johnson) quotes another individual as asserting that "'[Plaintiff's] boards are the same now as they were 20 years ago. . . . You know, the wave at Sunset has never changed, so why should he?' . . ."

(m)    Further, Defendant (Johnson) makes extremely

derogatory references to William S. Burroughs

and his notoriously controversial novel, *Naked Lunch*, in

an apparent and direct connection to Plaintiff.

(n)     This book (banned by Boston courts in 1962 after

its first publication in 1959 due to its extreme

obscenity—notably re: child murder, pedophiliac acts,

illicit drug abuse, and drug addiction) consists of many

loosely related vignettes in which several sexually

and/or otherwise socially depraved, sadistic, and drug-

addled characters mix together in radically perverse and

repulsive fantasies with peculiar, predatory creatures

and other malign, eccentric, or otherwise disturbed

personalities. One of the most quoted and infamous

parts of *Naked Lunch* is a section known as "The Talking

Asshole". This story-within-a-story, which forms the

nucleus of Burroughs' book, involves a man who

teaches his anal orifice to talk.

(o)     Therefore, a right-minded person familiar with *Naked

Lunch* would plainly infer that Defendants considered

Plaintiff to be not only a "talking asshole," but also an

opprobrious person who engages in sadistic, homicidal,

or depraved pedophiliac acts, in addition to being

addicted to heroin (the drug Burroughs is notoriously most associated with).

(p)  This extremely pejorative, sensational, and false impression of Plaintiff—which the article provides no evidence to support—is reinforced by the article's subtitle: "With apologies to William S. Burroughs," which leaves the reader with the unmistakable and unambiguous impression that Defendants, by employing other defamatory narrative devices (such as pretentious allusions to other avant-garde literary works of fiction[1]) intends to "apologize" to Burroughs for comparing him (or his work) to Plaintiff (or his work)—plainly connoting that Plaintiff doesn't deserve or otherwise merit comparison with Burroughs or his book, thereby denigrating Plaintiff even more adversely.

(q)  Defendant's suggestions of this and other notorious or otherwise scandalous works (of fiction) can only be meant to convey a patently negative, disparaging, or deleterious image of Plaintiff's character, which creates or otherwise reinforces a false, sensationalized

---

[1] SEE, e.g., Exhibit "1", page 115, re: defendant's (Johnson) allusion to *Through the Looking Glass*.

caricature of him and his business that has no basis in fact.

24.  Plaintiff first became aware of the injury done to him by Defendants, and each of them, on or about August 20, 2006.

25.  Moreover, Defendants did not consult, notify, or otherwise secure the consent or authorization of the plaintiff regarding the article; nor did defendants attempt or otherwise seek to do same.

26.  Further, Defendants either knew that the statements in the article and "Liner Notes" (mentioned above ) concerning Plaintiff were false, or published such statements in reckless disregard of their truth or falsity.

27.  Careful research or inquiry by Defendants would have revealed that most, if not all, of the quotes attributed to Plaintiff were false and/or inaccurate; however no attempt to fact check was made by Defendants to confirm or otherwise verify the extensive quotations and other various alleged points of fact, or other detailed references to Plaintiff's name, image, and trade.

28.  Defendants knowingly and intentionally published defamatory
falsehoods and inaccurate and false quotations whose substance
makes substantial danger to the Plaintiff's reputation apparent.
Thereby Defendants engaged in highly unreasonable conduct
which constitutes an extreme departure and gross deviation from
the standards of investigation and reporting ordinarily adhered to by
responsible publishers.

29.  Thus, the above publication made by Defendants and the subject of
this complaint was unfair, false, and malicious. Publication of false
quotations and other (allegedly) private facts was not privileged by
Defendants, and, as such, was a libelous and defamatory, disparaging
and invasive publication on the part of the Defendants.

30.  This publication has also exposed Plaintiff to public wrath,
hatred, contempt and ridicule; and has deprived Plaintiff of the
benefits of public confidence, social intercourse, and, as such, is
libelous per se.

31.  As a direct and proximate cause of Defendants' actions and
misconduct described above and below herein, Plaintiff has suffered
and continues to suffer special damages in the form of being evicted

from his place of employment on or about August 21, 2006, thus resulting in loss of employment and, also as a result of defendants' statements impugning the quality of a Plaintiff's product or service, destroyed his ability to conduct his business or trade, consequently impairing vendability and ensuing in loss of customers.

32.   Because the printing , publication, and circulation of the article set forth above and the subject of this complaint was malicious and unwarranted, and such evil-minded and irresponsible actions were done by Defendants, and each if them, acting through their managing editor in charge and with Defendants' knowledge and under defendants' direction, with such recklessness and carelessness as to amount to wanton disregard of the rights of Plaintiff and indifference to the infliction of injury on Plaintiff or with such gross negligence and total disregard of the  consequences of the acts by Defendants that such conduct of Defendants is totally without justification or excuse; for these reasons, and to deter wrongful conduct of this nature in the future, Defendants, and each of them, should be subject to an assessment of exemplary and punitive damages in the amount of deemed appropriate by a jury.

## SECOND CAUSE OF ACTION

## (DISPARAGEMENT OF TRADE)

33.  Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 1 - 17 above and Paragraphs 18 - 32 of the First Cause of Action set forth above and incorporates the same as if set forth fully herein.

34.  Further, Defendants' discussion of Plaintiff and Plaintiff's alleged professional and personal (i.e., *private*) activities connected with the making of surfboards is, as stated above, replete with injurious falsehoods, inaccuracies, distortions, disparagements, hyperbole, errors of fact, and inaccurate/false quotations together which ascribe to Plaintiff conduct, characteristics, and conditions incompatible with the proper conduct of Plaintiff's lawful profession.

35.  Defendants' discussion of Plaintiff and Plaintiff's alleged professional and personal (or *private*) activities involve defamatory and disparaging statements impugning the quality of Plaintiff's product or service; and falsely impute misconduct in Plaintiff's trade which cause Plaintiff to suffer disrepute, loss of customers and business, fear of ridicule, and extreme public humiliation.

*17*

36. Therefore, Defendants, and each of them, have, as a direct result of their grossly malicious misconduct, severely harmed and impaired Plaintiff's relationship(s) with general public and consumers/ customers, as well as any advantage or expectancy of future business or trade.

37. The grossly unprofessional characteristics and conduct ascribed to Plaintiff by Defendants, and the complete and utter failure of Defendants to inject the element of truth into their published material pertaining to Plaintiff, reveal that Defendants acted with evil-mindedness and with intent to injure Plaintiff.

38. This publication has also exposed Plaintiff to public wrath, hatred, contempt and ridicule; and has deprived Plaintiff of the benefits of public confidence, social intercourse, and commercial trade, and, as such, is libelous per se.

39. The professional standing and reputation of Plaintiff has been damaged and injured by the conduct, characteristics, direct quotes, and conditions falsely ascribed to him in the article(s) under review in this complaint. Plaintiff is, therefore, entitled to

recover the amount of such damage and injury that he sustained in the form of general and special damages as shall be deemed appropriate by a jury.

## THIRD CAUSE OF ACTION
## (APPROPRIATION / UNAUTHORIZED USE OF
## INDIVIDUAL'S NAME AND PHOTOGRAPH IN
## UNFAVORABLE PUBLICATION)

40. Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 33 - 39 of the Second Cause of Action set forth above and incorporates the same as if set forth fully herein.

41. In August - September 2006, Defendants, and each of them, through the duly authorized agents and employees of Journal Concepts, Inc. d.b.a. "The Surfer's Journal" (*TSJ*) used Plaintiff's name and picture (i.e., photograph) without plaintiff's prior knowledge, consent, or authorization to illustrate the above-mentioned article contained in the Volume 15, Number 4, of *TSJ*.

42. Defendants, and each of them, appropriated Plaintiff's professional

reputation and logo (or brand ) and private or otherwise
confidential relationships with his clients for Defendants' own selfish
purposes (i.e., unjust enrichment)—unauthorized use of Plaintiff's
name and image in an unfavorable publication. In furtherance of
these nefarious purposes, Defendants placed Plaintiff and his
professional activities in a false and damaging light in the public eye
in violation of Hawai'i case law.

43. Defendants made numerous explicit and sensational references to
illicit drugs regarding Plaintiff's (alleged) activities and character
including other implications or innuendoes regarding the (ab)use of
or addiction to illicit drugs that do not in any way serve the general
or public interest—but rather pander to lurid curiosity which
serve no legitimate purpose.

44. Defendants' unauthorized use of Plaintiff's name and picture includes
at least eleven (11) unauthorized photographs of Plaintiff, Plaintiff's
place of business, and products of Plaintiff's trade.

45. Defendants' publication of these unauthorized photographs in some
instances prominently display Plaintiff's professional logo or brand or
label ("Brewer/Chapman Surfboards . . ." (etc.) and his place of

business in an unflattering, disparaging, and extremely deceptive context.

46. The actions of Defendants, and each of them, as described herein, above and below, were willful and wanton, oppressive, and otherwise characterized by aggravating circumstances sufficient to justify the imposition of punitive or exemplary damages. Moreover, as a direct and proximate result of Defendants' actions and misconduct, Plaintiff has suffered and continues to suffer the damages described herein. Plaintiff, therefore, seeks special, general, and punitive or exemplary damages in such amount as shall be deemed appropriate by a jury.

## FOURTH CAUSE OF ACTION

## (TORTIOUS INTERFERENCE WITH BUSINESS)

47. Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 40 - 46 of the Third Cause of Action set forth above and incorporates the same as if set forth fully herein.

48. Defendants, and each of them, intruded upon a part of Plaintiff's

life which Plaintiff has secluded from public gaze and interference
—Plaintiff's private, confidential, and legally protected professional
relationships with his clients.

49. By engaging in the acts described above and below, Defendants, and
each of them, wrongfully, intentionally, and tortiously invaded and
interfered with the privacy, place of business, ability to work, and
business relationships with clients/customers of Plaintiff in such
manner as would not only impair a person's ability to work and
make a (professional) living, but also outrage or cause mental
suffering, shame or humiliation to a person or ordinary sensibility.

50. The actions of Defendants, and each of them, as described herein
above and below, were willful and wanton, oppressive, and
otherwise characterized by aggravating circumstances sufficient to
justify the imposition of punitive or exemplary damages. As a direct
and proximate result of defendants' actions, Plaintiff has suffered and
will continue to suffer the damages described herein. Plaintiff,
therefore, seeks special, general, and punitive damages in such
amount as shall be deemed appropriate by a jury.

## FIFTH CAUSE OF ACTION

## (UNJUST ENRICHMENT)

51.    Plaintiff repeats, realleges, and adopts by reference to the facts and
       allegations contained within Paragraphs 47 - 50 of the Fourth Cause
       of Action set forth above and incorporates the same as if set forth
       fully herein.

52.    Defendants' unauthorized use of Plaintiff's name and picture and
       logo (or brand) and wanton publication and circulation containing
       numerous inaccurate or otherwise false quotations and other
       defamatory and disparaging falsehoods for unjust purposes of trade
       or profit or other related business and professional interests (i.e.,
       commercial benefit) is forbidden by Hawai'i Case Law.

53.    The actions of Defendants, and each of them, as described herein
       above and below, were willful and wanton, oppressive, and
       otherwise characterized by aggravating circumstances sufficient to
       justify the imposition of punitive or exemplary damages. As a direct
       and proximate result of defendants' actions, Plaintiff has suffered and
       will continue to suffer the damages described herein. Plaintiff,
       therefore, seeks special, general, and punitive damages in such

amount as shall be deemed appropriate by a jury.

## SIXTH CAUSE OF ACTION

## (INVASION OF PRIVACY)

54. Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 51 - 53 of the Fifth Cause of Action set forth above and incorporates the same as if set forth fully herein.

55. By engaging in the tortious acts and conduct described above and below, Defendants, and each of them, wrongfully, intentionally, and tortiously invaded the privacy of Plaintiff in such a manner as would outrage or cause extreme mental, emotional, and psychological suffering or injury to a person or ordinary sensibility.

56. Defendants' unauthorized appropriation of Plaintiff's name and image and their invasion of his privacy was unreasonable and wanton, extreme and outrageous, and, moreover, precisely because defendants' intruded upon and interfered with Plaintiff's private life in the form of an unfavorable publication of private facts and/or other alleged, defamatory facts which cast Plaintiff and Plaintiff's

*24*

personal and professional reputation in a false and opprobrious light, inflicted emotional distress and harm on Plaintiff and caused him to suffer other intangible but grievous emotional and psychological damages.

57. The actions of Defendants, and each of them, as described herein above and below, were willful and wanton, oppressive, and otherwise characterized by aggravating circumstances sufficient to justify the imposition of punitive or exemplary damages. As a direct and proximate cause of Defendants' tortious actions and misconduct, Plaintiff has suffered grievous injury and will continue to suffer the damages described herein.

## SEVENTH CAUSE OF ACTION

### (FALSE LIGHT)

58. Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 54 - 57 of the Sixth Cause of Action set forth above and incorporates the same as if set forth fully herein.

59. Careful examination of the article and other references made about

Plaintiff in the Vol. 15, No. 4 of *TSJ* indicates that the meaning conveyed by Defendants, and each of them, to any right-minded person (i.e., reader) is that Plaintiff is a social outcast, malcontent, and an arch-manipulator who habitually abuses or is otherwise addicted to illicit drugs and who also maligns the reputation of well-known and loved public figures. This patently false portrait (indeed sensational caricature) of Plaintiff describes or otherwise presents him in graphic terms as a morally objectionable person who has, for example, only been "sober for one year in 40"; has nothing but "a lot of time" (i.e., nothing else to do) on his hands; is a "fringe dweller" living in a "Hawaiian time warp"; and has no money other than that which he acquires from his preying on innocent bystanders and as the result of other related sinister, improvised stratagems.

60.   Though Defendants disingenuously present the article(s) under review in this complaint as a credible and true work(s) of investigative journalism, Defendants, and each of them, however *fail* to make clear or otherwise apparent that the published descriptions of Plaintiff (including direct quotations) are fabrications and <u>pure contrivance</u>—not actual statement(s) of the Plaintiff, which would

(seem to) add legitimate authority and credibility to the author's work, but are, in fact, malicious and untrue factual assertions that reflect the creation of the Defendants' own evil imagination, which were contrived out of subjective beliefs and resentment-driven prejudices and false stereotypes deliberately intended to present an unfavorable, negative, and ridiculous *caricature* of Plaintiff in order to, in the most exaggerated and outrageous terms possible, pander to TSJ's readership's lurid curiosity.

61.  The actions of Defendants, and each of them, as described herein above and below, were willful and wanton, oppressive, and otherwise characterized by aggravating circumstances sufficient to justify the imposition of punitive or exemplary damages. As a direct and proximate cause of Defendants' tortious actions and misconduct, Plaintiff has suffered grievous injury and will continue to suffer the damages described herein.

## EIGHTH CAUSE OF ACTION
## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

62.  Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 58 - 61 of the Seventh

Cause of Action set forth above and incorporates the same as if set forth fully herein.

63. Defendants' treatment of Plaintiff as stated herein constitutes extreme and outrageous behavior which exceeds all bounds usually tolerated by a decent, civil society. Moreover, Defendants' actions and misconduct as described above and below were done with malice and with deliberate intent to cause, or the knowledge that it would cause, severe mental distress to Plaintiff.

64. For example, Defendant (Johnson) carelessly and, indeed, under circumstances known to the Defendants, and each of them, maliciously implicates a Mr. "Edis Begovic" [sic], William S. Burroughs, and Plaintiff (by direct reference and innuendo of private facts[2]) with references, direct and indirect, to the abuse of illicit drugs in a sinister and cruel way that casts shame and disgrace on Plaintiff—and which, further, causes Plaintiff severe emotional distress, psychological harm, mental anguish, and public humiliation.

---

[2] "INNUENDO", as distinct from an "implication," refers specifically to the defamatory meaning a reader may be expected to draw from the communication because of extraneous facts known to the reader but not (necessarily) contained in the communication.

65.    As a direct and proximate result of Defendants' actions and misconduct, Defendants, and each of them, intentionally destroyed plaintiff's peace of mind and caused plaintiff severe mental and emotional distress. Moreover, Defendants acted maliciously and recklessly and with wanton disregard for Plaintiff's emotional and psychological well-being. Plaintiff has therefore suffered grievous injury and will continue to suffer the damages as described herein which are sufficient to justify the imposition of punitive or exemplary damages.

## NINTH CAUSE OF ACTION

## (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

66.    Plaintiff repeats, realleges, and adopts by reference to the facts and allegations contained within Paragraphs 62 - 65 of the Eighth Cause of Action set forth above and incorporates the same as if set forth fully herein.

67.    By their actions and misconduct described above and below, Defendants, and each of them, negligently inflicted emotional distress on Plaintiff.

*29*

68.   The actions of Defendants, and each of them, as described herein above and below, were willful and wanton, oppressive, and otherwise characterized by aggravating circumstances and, as a direct and proximate result of this misconduct, Plaintiff suffered and continues to suffer damages sufficient to justify the imposition of punitive or exemplary damages.

---

WHEREFORE, plaintiff respectfully prays for relief and requests:

1.     Judgment against Defendants jointly and severally, and that Plaintiff be awarded damages on the first, second, and third causes of action as follows:

A.    Compensatory damages in such amount as shall be proven at trial;

B.    Special damages in the sum of $5000.00 (five thousand dollars) per month (since publication of the defamatory and invasive article and magazine in review in this complaint) for a total of $20,000.00 (twenty thousand dollars) to date;

C.    Punitive and exemplary damages in such amount as shall be deemed appropriate by the jury;

D.    Reasonable attorney fees and costs of suit incurred herein;

E.    Prejudgment and postjudgment interest at the legal rate;

F.    Such other and further relief as the court may deem just and proper.

DATED: Honolulu, Hawaii, January _____3rd_____, 2007.

_____
ARTHUR E. ROSS, Esq.

Attorney for Plaintiff

CRAIG ELMER CHAPMAN