Of Counsel:
LAW OFFICE OF ARNOLD THIELENS PHILLIPS II
Attorneys at Law

ARNOLD THIELENS PHILLIPS #6640
1188 Bishop Street, Ste. 1404
Honolulu, Hawaii 96813
Telephone: (808) 528-3911/781-1414 Facsimile: (808) 528-5006
ATP@atphillips.com
Attorney for Plaintiff
CRAIG ELMER CHAPMAN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRAIG ELMER CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>JOURNAL CONCEPTS, INC. et al<br><br>Defendants. | CIVIL NO. CV07-00002 JMS/LEK<br><br>**PLAINTIFF'S REVISED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL; MEMORANDUM IN SUPPORT; CERTIFICATE OF COMPLIANCE and CERTIFICATE OF SERVICE**<br><br><u>Non-Hearing Motion</u><br><br>Trial Date:  February 24, 2009 |

## PLAINTIFF'S REVISED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL

COMES NOW Plaintiff CRAIG ELMER CHAPMAN, by and through his counsel of record, and hereby respectfully requests this Honorable Court to grant him judgment as a matter of law on the issues stated herein and a new trial.

This motion is made pursuant to Federal Rules of Civil Procedure 7(b), 50(b), and 59(a) and (b), and Local Rules 7.1 and 7.2(e), and is supported by the memorandum in support and the records and files herein.

DATED:    Honolulu, Hawaii March 14, 2009.


/s/  A. T. Phillips II
_____
            Arnold T. Phillips II
            Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

CRAIG ELMER CHAPMAN,

        Plaintiff,

v.

JOURNAL CONCEPTS, INC. et al

        Defendants.

CIVIL NO. CV07-00002 JMS/LEK

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S REVISED MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL**

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | INTRODUCTION | 11 |
| II | LAW | 11 |
| III. | ARGUMENT | 13 |
| | A.  **The Verdict Is Against the Weight of the Evidence.** | 13 |
| | B.  **Further Errors:** | **22** |
| |   1.  **Plaintiff is a Private Individual.** | 22 |
| |   2.  **Defendants' Had No Basis for a "Belief" in Plaintiff's *Alleged* "Heroin Addiction."** | **25** |
| |   3.  **Defendants' Counsel's Misconduct** | **31** |
| |   4.  **Evidence regarding Burroughs,** | 34 |
| |   5.  **Fletcher's "*almost*" statement.** | 41 |
| |   6.  **The "Authenticity" of Pezman's Tape-Recording.** | 43 |

**7.**     **Evidence regarding the Editorial Process.**     47

**8.**     **Defendants *Own* Publications**     48

 **9.**     **"Surfers: The Movie"**     50

**10.**      **Including Extraneous and Irrelevant Pages**

          **From Defendants' Trial Exhibit**     51


IV.   CONCLUSION     51

## TABLE OF AUTHORITIES

## CASES

Page

Alito v. Cowles Communications,
    430 F. Supp. 1360, 2 Med. L. Reptr. 1801, 1802
    (D.C.N.D. Cal. 1977)                                   19

Anderson v. Knox,
    297 F.2d 702, 711 (9th Cir. 1961)                  37

Anderson v. Liberty Lobby, Inc.,
    477 U.S. 242, 248 (1986)                   3, 8, 20

Baker v. Los Angeles Herald Examiner,
    42 Cal.3d 254, 260 – 261, 228 Cal. Rptr. 206,
    208 – 210, 721 P.2d 87, 90 – 91 (1986)          4

Baldwin v. Hilo Tribune-Herald, Ltd.,
    32 Haw. 87 (1931)                              13

Ben-Oliel v. Press Pub. Co.,
    251 N.Y. 250, 255, 167 N.E. 432 (1929)        31

Branzburg v. Hayes,
    (1972) 408 U.S. 665, 683,
    quoting Associated Press v. Labor Board,
    (1937) 301 U.S. 103, 132 – 133            18

Briscoe v. Reader's Digest Ass'n.,
    4 Cal 3d 529, 93 Cal. Rptr.
    866, 483 P.2d 34 (1971)                     15

Brown v. Kelly Broadcasting Co.,
    48 Cal.3d 711, 723
    (257 Cal. Rptr. 708, 771 P.2d 406) (1989)    31

Brown & Williamson Tobacco Corp. v. Jacobson,
    827 F.2d 1119 (7th Cir. 1987)               15

Burnett v. National Enquirer,
    7 Med. L. Rptr. 1321 (Calif. Sup. Ct. 1981),
    *modified*, 144 Cal. App. 3d 911, 193

Cal. Reptr. 206 (1983)                                                15

Burns v. McGraw-Hill Broadcasting Co.,
        569 P.2d 1028 (Okl. App. 1983)                                26

Cahill v. Hawaiian Paradise Park Corp., et al.,
        56 Haw. 522, 543 P.2d 1356 (1975)                            29

Cantrell v. Forest City Publishing Co.,
        418 U.S. 245 (1974)                                          15, 31

Commodity Futures Trading Comm'n v. Savage,
        611 F.2d 270, 282 (9th Cir. 1979)

Cooter & Gell v. Hartmarx Corp.,
        496 U.S. 384, 110 S.Ct. 2447 (1990)                         37

Copp v. Paxton,
        45 Cal.App. 4th 829, 837 (52 Cal.Rptr.2d 831 (1996)         27

Curtis Pub. Co. v. Butts,
        388 U.S. 130, 154-55 (1975)                                 12, 17

Dunlap v. Wayne,
        105 Was.2d 529, 539, 716 P.2d 842 (1986)                    30

Dunn & Bradstreet, Inc. v. Greenmoss Builders,
        (1985) 472 U.S. 749, 764                                     21

Eastwood v. National Enquirer, Inc.,
        123 F.3d 1249, 1251 (9th Cir. 1997)                         21

Eisenberg v. Ins. Co. of North America,
        815 F.2d 1285, 1289 (9th Cir. 1987)                         3

Fasi v. Gannet Co.,
        930 F. Supp. 1403, 1409 (D. Haw. 1995)                     27

Fernandes v. Tennbruggencate,
        65 Haw. 226 n.1., 649P.2d 1144, 1147 n.1 (1982)            6, 26

Fitzgerald v. Penthouse International, Ltd.,
        691 F.2d 666 (4th Cir. 1982)                                18

Flowers v. Carville,
        310 F.3d 1118, 1130 (9th Cir. 2002)                        38

Gertz v. Robert Welch, Inc.,
        418 U.S. 323 (1974)                                         5, 12-14

Gold v. Harrison,
        88 Haw. 94, 101, 962 P.2d 353, 360 (1998)                  27, 32

Goldwater v. Ginsburg,
    414 F. 2d 324 (2d Cir. 1969)          20

Gomba v. McLaughlin,
    504 P.2d 337, 339 (Colo. 1973)         32

Harte-Hanks Communications, Inc. v. Connaughton,
    491 U.S. 657, 692-93 (1989)          21

Herbert v. Lando,
    441 U.S. 153, 199 [4 Med. L. Rep. 2575] (1979)    20, 30, 38

Herron v. Tribune Pub. Co., Inc.,
    108 Wash.2d 162, 171, 736 P.2d 249 (1987)    20

Hodges v. Oklahoma Journal Pub. Co.,
    4 Med. L. Rep. 2492, 2494 (Okl. App. 1979)    29

Hutchinson v. Proxmire,
    99 S. Ct. 2675, 2680 n.9 [5 Med. L. Rep. 1279] (1979)

Kahanomoku v. Advertiser Publ'g Co.,
    Haw. 701, 714 120 WL 832, at *7
    (Haw. Terr. Dec. 22, 1920)         26

Kang v. Harrington,
    59 Haw. 652; 587 P.2d 285 (1978)       37

Kahn v. Bower,
    232 Cal.App.3d 1599, 1608 [284 Cal.Rptr. 244] (1991)    12,

Khawar v. Globe International, Inc.
    (1998) 19 Cal. Ct.App. 4th 254        40

Klaw v. New York Press Co.,
    122 N.Y.S. 437, 438          29

Kohn v. West Hawaii Today, Inc.,
    65 Haw. 584, 590, 656 P.2d 79, 83 (1982)    32

Kroll Assoc. v. City and County of Honolulu,
    833 F. Supp. 802 (1993)         12-13

Kuhn v. Tribune-Republication Publishing Co.,
    637 P.2d 315, 319 (Colo. 1981)        18

Mahnke v. Northwest Publications, Inc.,
    160 N.W.2d 1 (Minn. 1968)        15, 18

Masson v. New Yorker Magazine, Inc.,
    501 U.S. 496, 499, 111 S.Ct. 2419, 115

L.Ed.2d447 (1991)                                              3, 33
Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986)
McFarlane v. Sheridan Square Press, Inc.,
    91 F.3d 1501, 1510 (D.C. Cir. 1996)                        21
Miami Herald Publishing Co. v. Ane,
    423 So. 2d 376 (Fla. App. 1983)                            19
Miller v. National Broadcasting Co.,
    (1986) 187 Cal.App.3d 1463, 1492                           19
Milkovich v. Lorain Journal Co.,
    497 U.S. 1, 18 [110 S.Ct. 2695, 111 L.Ed.2d 1] (1990)      28
Miracle v. New Yorker Magazine, Inc.,
    190 F.Supp.2d 1192 (D. Haw. 2001)                         5, 26
Murphy v. Maui Publishing Co., Ltd.,
    23 Haw. 804 (1917)
Nader v. Toledano,
    408 A.2d 31 (D.C.App. 1979)                               29
New York Times Co. v. Sullivan,
    376 U.S. 254 (1964)                                       3, 7
Newton v. Nat'l Broad Co.,
    930 F.2d 662, 669 (9th Cir. 1990)                       34
Palm Springs Tennis Club v. Rangel,
    73 Cal.App.4[th] 1,5, [86 Cal.Rptr.2d 73] (1999)          30
Philadelphia Newspapers, Inc. v. Hepps,
    475 U.S. 767, 783 (1986)                                  20, 38
Rebozo v. Washington Post Co.,
    637 F.2d 375 (5th Cir. 1981)                            29
Robel v. Roundup Corp.,
    148 Wash.2d 35, 55, 59, P.3d 611 (2002)                   30
St. Amant v. Thompson,
    390 U.S. 727 (1968)                          3, 6-7, 16, 19-20,
Selleck v. Globe International, Inc.,
    166 Cal. App. 3d 1123, 1132, 212
    Cal. Rptr. 838, 844 (1985)                                6
Slaughter v. Friedman,

32 Cal.3d 149, 153-154

    [185 Cal.Rptr. 244, 649 P.2d 886] (1982)          30

Smith v. Ithaca Corp.,

    612 F. Supp. 215 (5th Cir. 1980)          40

Spence v. Funk,

    396 A.2d 967 [4 Med. L. Rep. 1981] (Del. 1978)          31

Sprouse v. Clay Communications, Inc.,

    211 S.E.2d 674 (W.VA. Ct. App. 1975),

    *cert. denied*, 423 U.S. 882, *reh'g denied*, 96 S. Ct. 406          28, 30

Swanjian v. Gen. Motors Corp.,

    916 F.2d 31 (1st Cir. 1990)          40

Tagawa v. Maui Publ'g Co.,

    50 Haw. 648, 652, 448 P.2d 337, 340 (1968)          33

Tavoulareas v. Washington Post Co.,

Tavoulareas v. Piro,

    759 F.2d 90 *reh'g en banc granted*

    763 F.2d 1472 (D.C. Cir. 1985), *rev'd*,

    817 F.2d 762 (D.C. Cir. 1987)          14, 38

Time, Inc. v. Firestone,

    424 U.S. 448, 455, 47 L. ed. 2d 154, 96 S. Ct. 958 (1976)          15

Underwager v. Channel 9 Australia,

    69 F.3d 361, 366 (9th Cir. 1995)          32

United States v. Mariani,

    178 F.R.D. 447 (M.D.Pa. 1998)

U.S. v. Universal Rehabilitation Services, Inc.,

    205 F.3d 657 (3rd Cir. 2000)          40

Varanese v. Gall,

    35 Ohio St. 3d 78, 518 N.E.2d 1177 (1988)          20

Virgil v. Sports Illustrated,

    424 F. Supp. 1286 (S.D. Cal. 1976)          15

Virgil v. Time, Inc.,

    527 F.2d 1122 (9th Cir. 1975)          15

Waldbaum v. Fairchild Pub., Inc.,

    201 U.S. App. D.C. 301, 627 F.2d 1287, 1293

    n.12 (D.C. Cir. 1980); *cert. denied*, 449 U.S.

898, 66 L.Ed. 2d 128, 101 S. Ct. 266 (1980)                    13,

West v. Waymire,

114 F.3d 646, 651 (7th Cir. 1997)                    21

Wolston v. Reader's Digest Ass'n, Inc.,

99 S. Ct. 2701, 2709 [5 Med. L. Rep. 1273] (1979)                    40

TREATISES

RESTATMENT (SECOND) OF TORTS § 563,

Comment (c)                    28

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF
HIS REVISED MOTION FOR JUDGMENT AS A MATTER OF LAW
AND FOR NEW TRIAL**

## I.      INTRODUCTION

The jury trial in this matter commenced February 24, 2009. The jury returned verdict on March 5, 2009, answering only one question on the Special Verdict Form for each defendant. The jury found` Plaintiff did not prove that Defendants' statements were false. Plaintiff now requests the Court to grant him a judgment as a matter of law on the issues discussed herein and to grant him a new trial.

## II.     LAW

Federal Rule of Civil Procedure 50 provides:

(b) Renewing Motion for Judgment After Trial; Alternative Motion for New Trial. If, for any reason, the court does not grant a motion for judgment as a matter of law made at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. The movant may renew its request for judgment as a matter of law by filing a motion no later than 10 days after entry of judgment--and may alternatively request a new trial or join a motion for a new trial under Rule 59. In ruling on a renewed motion, the court may:

(1) if a verdict was returned:

(A) allow the judgment to stand,

(B) order a new trial, or

(C) direct entry of judgment as a matter of law;

Fed. R. Civ. P. 50(b)(1).

Federal Rule of Civil Procedure 59 provides:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States. . . .

(b) Time for Motion. Any motion for a new trial shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. P. 59(a), (b).

Plaintiff is entitled to a judgment as a matter of law on the issues of both defamation and actual malice; he is also entitled to a new trial, based on any of four separate grounds: (1) The court erred as a matter of law in instructing the jury on the matters listed and argued below in § III; (2) even if an instruction to the jury on this issue were appropriate, the Court's instruction itself was erroneous; (3) even if the Court did not err in

12

instructing the jury, the jury's verdict is against the weight of the evidence;

and (4) Defendants' counsel's misconduct deprived Plaintiff of a fair trial.

SEE: *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.

1987) (citing, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct.

2505, 2511 (1986)). The question is whether "reasonable minds could differ

as to the import of the evidence." *Id*.

## III.    ARGUMENT

### A.    The Verdict Is Against the Weight of the Evidence.

All evidence and testimony at trial demonstrated that Pezman

fabricated a false statement of fact and acted with actual malice as

articulated in *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964).

Evidence and Pezman's testimony shows he fabricated a false

statement and falsely attributed it to another speaker with a reckless

disregard for the truth. SEE *Masson v. New Yorker Magazine, Inc.,* 501 U.S.

496 (1991) at 510.

In *St. Amant* v. *Thompson*, 390 U.S. 727 (1968), the Supreme Court

identified evidence that may be employed to attempt to establish "actual

malice":

    (1)       The communication has been fabricated by defendants.

    (2)       It is the product of defendant's imagination.

(3)     It is based wholly on unverified information.

(4)     It contains allegations that are so inherently improbable that only a reckless person would put them into circulation.

(5)     It is published despite obvious reasons to doubt the veracity of the informant upon whom the article is based or the accuracy of his reports. (*Id*. at 732)].

As to criterion No. 1: the communication was fabricated by Pezman (same can be said of Johnson's article[1]); as to criterion No. 2: the reports were the product of Defendants' "imaginations" (*i.e.,* no evidence or documents were produced at trial demonstrating the contrary—Johnson testified that he relied upon his "*memory*"; Pezman testified that he had only "*impressions*" and no first hand or otherwise verified information); as to criterion No. 3: the reports were based on "wholly on unverified information" (neither Pezman nor Johnson conducted any prepublication investigation at all); as to criterion No. 4, the allegation that Plaintiff has been a "*heroin addict*" for 39 years (since he was 15 years old) is plainly "so inherently improbable that only a reckless person would put [such an allegation] into circulation"; as to criterion No. 5, it can be judged that both

---

[1] Johnson's "drafts" indicate evidence of falsity and fabrication—in addition to the fact that Johnson has no evidence (i.e., notes, "*journals*" or "*diaries*") to support or confirm his published statements.

Defendants published defamatory statements "despite obvious reasons to doubt the veracity of the informant upon whom the article is based or the accuracy of reports" given that (a) they fabricated their stories[2] and (b) failed to conduct any kind of prepublication investigation.

Evidence demonstrates Defendants published false statements of fact with intent to deceive and harm Plaintiff's personal and professional reputation. (SEE: *e.g.*, Transcript of Pezman, at Page 14, line 9: "*You don't think this would hurt* [Plaintiff's] *feelings, do you*?" and Johnson at Page 118 of the Article: "*I was so pissed off . . . It wasn't worth it anymore*"; at trial Pezman admitted during direct testimony that "*the information* [re: Plaintiff's sobriety] *could have an adverse affect on Owl.*")

It can be judged that both Johnson's and Pezman's published statements are actionable for defamation precisely because they "express or imply a verifiably false fact about" Plaintiff's attitude and conduct. *Miracle v. New Yorker Magazine, Inc.*, 190 F.Supp.2d 1192 (D. Haw. 2001) at 1198; cf. *Gertz v. Welch*, 418 U.S. 323, 344 (1974) at 342 (material changes in a quoted statement's meaning). The false attribution of quotations compounded by other allegedly "personal information" is defamatory precisely because it "lowers [Plaintiff] in the estimation of the community

---

[2] There is no evidence to the contrary.

[and] or deters third persons from associating or dealing with him." *Fernandes v. Tennbruggencate*, 65 Haw. 226 n.1., 649P.2d 1144, 1147 n.1 (1982).[3] Further, no reasonable person could believe that what Pezman says confirms, much less supports, what he "quotes" Baxter and Fletcher as "saying." *St. Amant v. Thompson*, 390 U.S. 727 (1968) at 732.

As to both Defendants, any intentional or reckless alteration **proves actual malice** within the meaning of *New York Times* and its progeny—so long as the altered passages within quotation marks purport to be a *verbatim* rendition of what was "said" contains material inaccuracies and is defamatory. *Masson* (*supra*) at 509; *Selleck v. Globe International, Inc.*, 166 Cal.App. 3d 1123, 1132, 212 Cal Rptr. 838, 844 (1985) (false attribution of statements constitutes libel if the falsity exposes person to injury)].

**Defendants presented no evidence**. They had no corroborating non-party witness testimony — although an affidavit was produced demonstrating that Johnson's testimony is false.[4] To be sure, there was neither non-party testimony nor evidence to prove or defend Defendants' case.

---

[3] Four (4) credible witnesses (Rick Williams, Jaimie Allen, Davis Knowles, and Bob McKinnis) provided testimony that corroborates and supports Plaintiff's claims as a matter of law. There is no lawful reason to doubt the credibility of such non-party witness testimony. **SEE: FRE 405, 602 – 603, 608, 701, 803.**

[4] SEE: Plaintiff's Trial Exhibit Nos. 6 – 7.

Evidence shows that Johnson's drafts do not match the published statements.[5] Evidence indicates Defendants were in a position to obtain verification or confirmation of the information they intended to publish; they could have easily learned it was false or inaccurate; but they deliberately avoided Plaintiff. This is evidence of "grossly inadequate investigation," which—combined with evidence of falsity and fabrication—is sufficient to prove "actual malice." *St. Amant v. Thompson*, 390 U.S. 727 (1968) at 732.

Plaintiff therefore presented a *prima facie* case that Defendants published statements with "actual malice." Moreover, Plaintiff produced specific evidence showing that Defendants' statements were published with knowledge that they were false and that they were published with reckless disregard of whether they were false or not. *New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) at 279 – 280.

The jury disregarded the weight of evidence demonstrating that:

(i)     Defendants published false statements without believing in the truth of the publication: *i.e.*, Defendants' reports were <u>fabricated</u>.

(ii)    Defendants' statements were published despite reasons to doubt the accuracy of reports.

---

[5] SEE: Plaintiff's Trial Exhibit No. 14.

(iii)   Defendants changed their story at trial radically and denied or otherwise contradicted their responses to discovery.

(iv)   Defendants made myriad misstatements of "fact" and other misrepresentations of "truth" at trial that are both implausible and false.

(v)   Defendants deliberately avoided Plaintiff precisely because they entertained serious doubts as to the truth of their publication.

(vi)   Defendants' false attribution of statements to both Plaintiff and others constitutes libel specifically because such falsity exposes Plaintiff to injury.

(vii)   Defendants' resorted to surreptitious methods of gathering "information" and published libelous material regarding Plaintiff with knowledge of falsity and with intent to defame his personal reputation and professional standing.[6]

Overwhelming evidence of Defendants' failure to investigate is, coupled with other evidence on record, cumulatively sufficient to establish clear and convincing inference of actual malice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The jury failed to recognize this firmly established precedent of law. It is a failure of the jury not to follow

---

[6] SEE: Plaintiff's Trial Exhibit No. 13.

instruction No. 2. Their failure shows that the jury *ignored* or *denied* this instruction and that they instead substituted their feeling of what the law should be for the court's statement. Clearly, the jury ignored fact evidence offered by Plaintiff on Defendants' fault in failure to adequately investigate the truth of the published statements—which, as a matter of law, encompasses the falsity of the matters asserted.

The evidence was that Pezman put words into the mouth of Baxter (words that Pezman <u>admits</u> *Baxter neither said nor believed to be true*). This statement of Pezman's went to the jury. Pezman admitted in his testimony that he **fabricated** the statement, **falsely attributed** it to another speaker, and, in effect, **recklessly disregarded** whether it was true or not. Thus, the **falsity** of the "sobriety" statement **is proven** by Pezman's testimony—above and beyond the fact evidence on record.

The "sobriety" comment *is not* Baxter's statement and therefore it cannot be "true" and must, accordingly, be **false**. <u>Any finding by the jury that the statement was not false (i.e., "*true*") goes against the evidence and law and cannot be squared with the instructions</u>. *For this reason alone, Plaintiff's motion should be granted*. The jury's finding indicates that it became a body acting independently of the law substituting its whim and

fancy, bias and prejudice for the reasoned and thoughtful deliberation required under the law.

In this contaminated atmosphere Plaintiff did not have a chance. His rights and privileges under the law were carelessly disregarded and the jury became a roving commission to reward and punish based on their own opinions or feelings—obviously exacerbated by Pezman's and defense counsel's inflammatory allegations of "*heroin*" and "*heroin addiction*"—none of which had any kind of evidentiary basis.

At trial, <u>Defendants failed to produce any evidence or independent witness testimony</u> that confirms or supports their claims and defenses. The jury's action must be supported only by the testimony of the Plaintiff and his witnesses and the evidence. Testimony of Defendants and the rousing arguments of defense counsel are not sufficient to counter Plaintiff's claims and the evidence (or lack thereof) on record.

Evidence in the form of Johnson's various drafts and Pezman's tape-recording clearly contradicts substantial portions of the published statements—showing them to be both false and/or fabrications. Johnson has no notes or evidence to confirm his statements. Johnson testified that he

can't "*recall*" when (what year?) these supposed events occurred.[7] As to his investigatory failure, Johnson testified that <u>he deliberately avoided Plaintiff</u> for fear that he would "*disagree*" with Johnson. Clearly, Johnson's "story" is—especially given evidence of his *false exculpatory statements and declarations*[8]—incredible.

Johnson also offered false and contradictory testimony. When asked the question "When was the last time you interacted with Plaintiff?" Johnson answered (multiple times) it was "*somewhere in the mid-1990s*" "*around the time of the board transaction.*" However, Johnson also claimed impossibly to have "*interviewed*" Plaintiff in **2000** as a part of "*preparation*" for another article.[9] Johnson was not a credible witness.

It is impossible and at odds with law and established precedent to conclude that Pezman's "interview" verifies, much less corresponds (*verbatim* or "substantially") with the "Liner Notes." *Kahn v. Bower*, 232 Cal.App.3d 1599, 1608 [284 Cal.Rptr. 244] (1991).

---

[7] Although Johnson implausibly testified that he remembered (from "*memories*"—at more than a decade's remove) everything Plaintiff and others allegedly said *verbatim*. It is equally implausible that Johnson carefully preserved his "*notes*" and "*journals*" and "*diaries*" for over a decade and then—just as this lawsuit was filed—he "*misplaced or* [threw them] *out.*" Further, there is no evidence of the alleged "surfboard" either (which Plaintiff testified and all the evidence indicates does not and never did exist).

[8] Which the jury should have been free to look upon as evidence of guilty conscience and actual malice—on the theory that an innocent, honest person would have no reason to lie.

[9] SEE: Plaintiff's Trial Exhibit No. 44: TSJ Vol. 9, No. 1, published in **2000**.

**B.     Further Errors**

Plaintiff points to the following errors in support of his motion.

**1.     Plaintiff is a Private Individual.**

After the close of evidence at trial the Court should have found that, as a

matter of law, Plaintiff is a private individual — **not** a "General Purpose

Public Figure." SEE: *Kroll Assoc. v. City and County of Honolulu*, 833 F.

Supp. 802 (1993). SEE ALSO: *Curtis Pub. Co. v. Butts*, 388 U.S.  130, 154-

55 (1975) at 164; *Gertz v. Robert Welch*, *Inc*., 418 U.S. (1974) at 345, 351 –

352. Because this determination was avoided, Plaintiff was held to a higher

standard of proof on liability such that allowed Defendants to introduce

evidence (as to their state of mind) that was highly prejudicial to Plaintiff.[10]

Such prejudice was not cured by an limiting instructions (as to the "truth" of

such evidence). This created a toxic atmosphere that put Plaintiff at great

disadvantage.

Looking to the *Gertz* test (at 323, 344) of having "access to channels of

communication and . . . opportunity to counteract false statements," it is

evident that Plaintiff does not "enjoy" any such "access," power or

influence. At the time of publication, Plaintiff had neither a phone nor

mailing address; at no time before or after publication (or during or after

---

[10] E.g., Defendants' Trial Exhibit Nos. 310 – 315 in addition to the testimony offered re: "heroin addiction."

trial) has Plaintiff been contacted by any member of the press. *Gertz* at 351 states that a public figure "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." The evidence on record demonstrates clearly that this cannot be said of Plaintiff. (SEE: *e.g.*, Defendants Trial Exhibit No. 311)

Surf "journalists" sneaking (i.e., "*lurking*") around and writing about Plaintiff <u>does not</u> equate with Plaintiff "voluntarily inject[ing] himself [into] . . . a particular public controversy."[11] A person becomes a "general purpose public figure" <u>only</u> if he is a well-known celebrity; that is, if his name is a household word. *Waldbaum v. Fairchild Pub., Inc.*, 201 U.S. App. D.C. 301, 627 F.2d 1287, 1293 n.12 (D.C. Cir. 1980); *cert. denied*, 449 U.S. 898, 66 L.Ed. 2d 128, 101 S. Ct. 266 (1980). Plaintiff is neither a "well known celebrity" nor is he a "household word." SEE: *Kroll Assoc. v. City and County of Honolulu*, 833 F. Supp. 802 (1993).

"Absent clear and convincing evidence of general fame or notoriety in the community, and pervasive involvement in the affairs of society, an individual should not be deemed a public personality for all aspects of his life." *Gertz* (*supra*) 418 U.S. 323, 344 (1974) at 352.

---

[11] SEE: Plaintiff's Trial Exhibit No. 13.

The record at trial clearly shows that most (if not all) of the "general fame" in the surfing community that Plaintiff may have derives <u>directly</u> and <u>primarily</u> from Defendant Steve Pezman's own publications—*e.g.*, *Surfer Magazine* (in the 1970s and 1980s: SEE: Defendants' Trial Exhibits Nos. 310, 312, 313, 315) and *The Surfer's Journal*. Other than the *Defendants' own publications*, the record does not indicate "clear and convincing evidence of [Plaintiff's] general fame or notoriety in the community, and [Plaintiff's] pervasive involvement in the affairs of society." *Id.*

Evidence and testimony on record demonstrates Plaintiff has never "knowingly relinquished [his] anonymity in return for fame or fortune."[12] Thus, it is unreasonable and at odds with established precedent "to attribute a public character to all aspects of [Plaintiff's] life." *Tavoulareas v. Washington Post Co., Tavoulareas v. Piro*, 759 F.2d 90 *reh'g en banc granted* 763 F.2d 1472 (D.C. Cir. 1985), *rev'd*, 817 F.2d 762 (D.C. Cir. 1987) at 772.

If the question to be asked is: what was the "nature and extent of [Plaintiff's] participation" in the surfing community? *Gertz* (*supra*) 418 U.S. 323, 344 (1974) at 352, the answer is, as the trial record shows, Plaintiff's

---

[12] The record shows that the last time Plaintiff granted an interview was in 1985; the only time before that was in 1976—both of which were published by Pezman.

participation and role within the "surfing community" is marginal and minimal.

Defendants failed to identify any controversy of public concern that Plaintiff has thrust himself into. Purely private matters, such as a Plaintiff's <u>alleged</u> drug problems or supposedly "*eccentric*" persona are insufficient to create a public controversy. *Time, Inc. v. Firestone*, 424 U.S. 448, 455, 47 L. ed. 2d 154, 96 S. Ct. 958 (1976). SEE ALSO: *Virgil v. Time, Inc.,* 527 F.2d 1122 (9th Cir. 1975) at 1129 ("newsworthiness standard").

## 2.   Defendants' Had No Basis for a "Belief" in Plaintiff's *Alleged* "Heroin Addiction."

Defendants made sensational and reckless references to "*heroin*" and "*heroin addiction*" <u>absent any evidence or independent testimony to verify or support such highly prejudicial testimony</u>.

"Beliefs" must be <u>proven</u>, not merely asserted; and any such <u>proof</u> must be supported by undisputed <u>factual</u> and/or <u>documented evidence</u>. SEE: *e.g.*, *Burnett v. National Enquirer*, 7 Med. L. Rptr. 1321 (Calif. Sup. Ct. 1981), *modified*, 144 Cal. App. 3d 911, 193 Cal. Reptr. 206 (1983); *Brown & Williamson Tobacco Corp. v. Jacobson*, 827 F.2d 1119 (7th Cir. 1987); *Cantrell v. Forest City Publishing Co*., 418 U.S. 245 (1974); *Mahnke v. Northwest Publications, Inc*., 160 N.W.2d 1 (Minn. 1968) at 9 – 11; *Briscoe*

*v. Reader's Digest Ass'n.*, 4 Cal 3d 529, 93 Cal. Rptr. 866, 483 P.2d 34 (1971).

Purely <u>vacant</u> assertions that Defendants "*believed*" this information to be "*true*" are unbelievable, unfounded, and totally insufficient—however they indicate Defendants' investigatory failure. SEE: *St. Amant v. Thomson*, 390 U.S. at 727 and 732.

A review of the evidence on this point is limited <u>exclusively</u> to Pezman's testimony that he <u>may</u> have heard a "*flippant*" comment from "*Dick Brewer*" in 2008 (<u>after</u> publication); a comment <u>allegedly</u> made by a "*Danny Callahan*" not established as to any specific time period, location or corroborating details; and something maybe said by an unidentified "female" that had an "*interchange*" with Pezman at another indefinite period in the "*mid 1980's.*"

Pezman testified that he had no first hand knowledge of and no contact with the Plaintiff since the mid-1960s. Clearly, Pezman had <u>no information</u> upon which to establish *any* drug use in any specific time period. Defendants presented **no evidence** to combat or challenge Plaintiff's statement that he used heroin in 1978 for four months and has not used the drug since 1978. The record does not have any evidence to establish that Plaintiff has been "addicted to heroin" for 39 out of the last 40 years: from 1966 to 2006.

This is not a case of interpreting conflicting evidence. **There is no evidence of thirty-nine years of continuous drug addiction in the record.** Pezman's testimony (and defense counsel's ravings) on this issue <u>cannot</u> support a finding of thirty-nine years of continuous drug addiction. There are no exhibits or non-party witness testimony on record to such effect: just the specious assertions of Pezman and defense counsel.[13]

Thus, it was an error not to provide a limiting instruction regarding Defendants' so-called "beliefs" in Plaintiff's *alleged* "heroin addiction" since there is no sufficient basis for such beliefs. Again, the evidence demonstrates that Defendants: (a) had no contact with Plaintiff; (b) failed to investigate or confirm the accuracy of such outrageous allegations; and (c) based their reports on unverified hearsay and gossip—and their own imagination, "*memories*," and "*impressions*."

The court should have instructed the jury that the quality of an investigation into libelous charges before publishing is key to determining whether the material was published with reckless disregard for the truth. *Curtis Publishing Co. v. Butts*, 388 130 (1967) at 136 - 165.

In this case, there is no evidence of intentional investigation shown by exhibits or testimony. On each occasion of information <u>allegedly</u> coming to

---

[13] SEE "**D**, ""**E**" and "**F**" below.

Pezman on this issue, it was from someone who <u>allegedly</u> "*volunteered*" it to him. <u>He did not investigate anything</u>—his testimony indicates that he merely had "*an **impression** that Owl was an addict*" and such "***impressions***" were bolstered by "***gossip***" and **hearsay**, although Pezman testified that he has "***no memory of specific inputs***" as to Plaintiff's state of sobriety.

This case gave abundant evidence of "<u>grossly inadequate investigation</u>." Cf. *Mahnke v. Northwest Publications, Inc*., 160 N.W.2d 1 (Minn. 1968) at 9 – 11; *Kuhn v. Tribune-Republication Publishing Co*., 637 P.2d 315, 319 (Colo. 1981). The jury should have been instructed accordingly.

From his testimony we know that Pezman had only <u>allegedly</u> heard only "***rumors***" and "***gossip***" and "***flippant comments***" made in the 1980s and <u>after</u> publication (in 2008).[14]   It is required that when sources make sensational or morbid allegations, they should be viewed with skepticism. Moreover, sources of "questionable reputation" that may be biased or tainted (*e.g*., drug addicts and drug dealers) are categorically unreliable sole informants. SEE: *Fitzgerald v. Penthouse International, Ltd*., 691 F.2d 666 (4th Cir. 1982); *Branzburg v. Hayes* (1972) 408 U.S. 665, 683, quoting *Associated Press v. Labor Board* (1937) 301 U.S. 103, 132 – 133; *Miller v.*

---

[14] SEE, e.g., Plaintiff's Trial Exhibit No. 2 ("Transcript") at Page 13, lines 4 – 5.

*National Broadcasting Co.* (1986) 187 Cal.App.3d 1463, 1492. Because Defendants' could have learned if the information was inaccurate, but consciously avoided learning the truth, this, is evidence of "actual malice." *Id*. at 389. SEE ALSO: *Miami Herald Publishing Co. v. Ane*, 423 So. 2d 376 (Fla. App. 1983).

Persons of "questionable reputation" may not be relied upon as the sole source of sensational or otherwise dubious information. *Alito v. Cowles Communications*, 430 F. Supp. 1360, 2 Med. L. Reptr. 1801, 1802 (D.C.N.D. Cal. 1977). In circumstances involving unreliable sources, *independent* verification and *sufficient* investigation is required. *Id*.

Here we have none. No effort was made to check or verify the accuracy of reports. However, it is evident that Defendants deliberately avoided Plaintiff and otherwise consciously avoided learning the truth— indeed both Defendants willfully blinded themselves to the falsity of their utterances. The absence of any effort to verify sensational allegations from questionable sources is damning evidence of actual malice when there is evidence of fabrication and falsity. SEE: *St. Amant v. Thompson* (1968) 390 U.S. 727, 731.

Combined with additional evidence — such as fabricating quotations, publishing knowing falsehoods, anger and hostility toward Plaintiff, and

29

reliance of sources known to be unreliable — Defendants' failure to investigate is cumulatively sufficient to establish clear and convincing inference of actual malice. SEE: *Herron v. Tribune Pub. Co., Inc.,* 108 Wash.2d 162, 171, 736 P.2d 249 (1987); *Anderson v. Liberty Lobby, Inc*., (*supra*) 477 U.S. (1986). SEE also *Goldwater v. Ginzburg*, 414 F.2d, 324, 342 (2d. Cir. 1969).

Defendants clearly "entertain[ed] serious doubts as to the truth of [their] publication," thus their prepublication conduct necessarily equates with the *New York Times* standard since each of them "c[a]me close to willfully blinding [themselves] to the falsity of [their] utterance[s]." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 783 (1986)).

Defendants' investigation must be extensive enough to support a belief in the "truth" of the material published. *Herbert v. Lando*, 441 U.S. 153 (1979) at 170. "Reasonable belief" <u>must be based on sufficient investigation</u>. *Varanese v. Gall*, 35 Ohio St. 3d 78, 518 N.E.2d 1177 (1988) at 1184.

On this perspective, Defendants acted with "reckless disregard" precisely because, at the time of publication, Defendants "in fact entertained serious doubts as to the truth if [their] publication" with a "subjective awareness of probable falsity." *St. Amant v. Thompson* (1968) 390 U.S. 727,

731. Accordingly, Defendants can fairly be judged to have "willfully blinded themselves to the falsity" of the published statements with malicious intent to avoid the truth. *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657, 692-93 (1989); SEE: *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1251 (9th Cir. 1997); *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1510 (D.C. Cir. 1996). (For analog to "ostrich" or "willful blindness" principle in cases under 42 U.S.C. sec. 1983, SEE: *West v. Waymire*, 114 F.3d 646, 651 (7th Cir. 1997)).

The evidence shows that Defendants' <u>false</u> statements of "fact" were not investigated, verified or confirmed. Thus, their specious assertion(s) of "belief" in the "truth" are not protected speech. *Dunn & Bradstreet, Inc. v. Greenmoss Builders*, (1985) 472 U.S. 749, 764 (conc. Opn. [743] of Burger, C. J.).

### 3.    Defendants' Counsel's Misconduct.

>From his opening statement until his closing remarks, while also raising the issue on cross-examination of Pezman, defense counsel made repeated, aggravated and altogether lurid references to "*heroin*" and Plaintiff's <u>alleged</u> "*heroin addiction*" <u>absent</u> any evidence or independent testimony to verify or support such highly prejudicial testimony. Defense counsel deprived Plaintiff of a fair trial and prejudiced the jury against him.

Like his clients, defense counsel had no reasonable or sufficient basis for his assertions and argument. (SEE: "2" *supra*) The testimony that defense counsel elicited from Pezman demonstrates only that he had <u>*allegedly*</u> heard only "*rumors*" and "*gossip*" and "*flippant comments*" made in the 1980s and **after** publication (in 2008).[15] Pezman's direct testimony indicates, moreover, that the word "heroin" was never mentioned to him by anyone at any time. Rather, Pezman "*connotated* [sic] *some sort of substance abuse*" from what "*others*" had <u>allegedly</u> told him (re: *e.g.*, "*rehab*"). Pezman testified that he "*has no specific memory of any occasion*" where someone said that Plaintiff is a "*heroin addict.*"

It was evident that the **only** source of "information" regarding "heroin" and Plaintiff's alleged "heroin addiction" came from Pezman himself—there is no other corroborating evidence or testimony to support such a prejudicial accusation.[16]

Plaintiff's testimony, and that of the four character witnesses who testified on Plaintiff's behalf, in addition to settled facts on record all contradict and otherwise are at extreme odds with Pezman's and defense counsel's egregious finger pointing.

---

[15] SEE, e.g., Plaintiff's Trial Exhibit No. 2 ("Transcript") at Page 13, lines 4 – 5. Further,

[16] Pezman testified that he "*believes*" that Plaintiff's "*heroin addiction is a matter of common interest.*" This outrageous <u>misrepresentation</u> **lacks any evidentiary basis whatsoever**—<u>nothing</u> on the record demonstrates any "common interest" in Plaintiff's alleged "heroin addiction."

In contravention of established law and in contempt of this Court's pretrial ruling, Defendants' counsel, on cross examination of Plaintiff on March 3, 2009, "opened the door" to the Burroughs issue(s) in an extremely toxic atmosphere that distorted facts to the acute disadvantage of Plaintiff— making him appear to be some sort of deviant in front of the jury.

Defense counsel surreptitiously inserted into trial this issue when he asked of Plaintiff a question containing the language from the Plaintiff's answer to interrogatories. (SEE: **Defendants' Trial Exhibit No. 322 at Page 73, Note 22** from which defense counsel read directly while consciously <u>omitting</u> only the words: "*William S. Burroughs and his various aliases.*")

Defense counsel's question was so bizarre and unexpected and contained language of such extreme homosexual content that there was no data group or background relevance from the previous evidence and testimony in the trial to which the jury (or Plaintiff) could connect this question. Without allowing further explanation from Plaintiff or Defendants, the impact was to have the Plaintiff tarred with the brush of this question that was clearly <u>outside</u> any area which the court had permitted in the trial. The language was so incendiary, sexual and sensational in nature that it could not be avoided and created an impression of prejudice for the Plaintiff.

Defense counsel's scheming, provocative, and contemptible questions opened up an area that could only be explained and distilled by Plaintiff if he was allowed to go into <u>how</u> the issue arose in the first place—which was the writing of the article by Johnson and the titling of the article by the publisher. But the Court had ruled this information to be outside the purview of trial—a point defense counsel was well aware of, but obviously did not care to respect or abide.

Once the issue of Burroughs was raised by defense counsel, however, Plaintiff should have been allowed to meet the various and related issues in this case with sufficient particularity such that he could produce relevant evidence to show that this reference was an essential part of Defendants' state of mind.

It was an inequitable double standard to permit Pezman and Defendants' counsel to make all manner of outrageous and unsupported allegations regarding "*heroin*" and insinuate the proscribed Burroughs issue(s) and yet deny Plaintiff his right to explore Defendants' state of mind, given that Burroughs and his published works have a notorious reputation associated with heroin, heroin addiction and sexual deviancy.

**4.     Evidence Regarding Burroughs.**

The pretrial ruling on this issue is not accepted by the Plaintiff. Defendants' published statements, evidence and testimony at trial all make clear references and comparison of the Plaintiff to Burroughs. The references, allusions and comparisons are so pervasive that the defamatory nature of the statements cannot be understood without reference to material on Burroughs. The Court erred in precluding Plaintiff from presenting evidence and testimony regarding the published statements referencing, alluding or otherwise comparing Plaintiff to "William S. Burroughs," his various character names and Burroughs' published works.

The record shows that such information was explicitly referenced in the published statements to defamatory effect. Moreover, all Defendants pretrial discovery and disclosures otherwise alluded to Burroughs, his various character names and his published works directly and by implication and innuendo. Indeed, the Burroughs references cast a long shadow over the course of the entire trial.[17]

Such evidence necessarily includes Defendants' publication as a whole. When examining whether a statement is false or defamatory, "the law does not dwell on isolated passages, but judges . . . the publication as a

---

[17] From the start of Johnson's direct testimony, when he declared "*El Hombre Invisible is the main character name for William S. Burroughs in a book he wrote titled QUEER*," until the last day of testimony, from Plaintiff, when defense counsel raised the issue of Burroughs' deviant homosexual conduct on cross examination, Burroughs was the elephant sitting in the middle of the court room.

whole." SEE: *Fernandes v. Tenbruggencate*, 65 Haw. 226, 230, 649 P.2d 1144, 1148 (1982) (per curiam) (quoting *Kahanomoku v. Advertiser Publ'g Co.,* Haw. 701, 714 120 WL 832, at *7 (Haw. Terr. Dec. 22, 1920)); *Miracle v. New Yorker Magazine*, 190 F. Supp. 2d. 1192 (D. Haw. 2001). Thus, Defendants' purely speculative and highly prejudicial testimony regarding "*heroin addiction*" as it relates to the publication as a whole is relevant and admissible precisely because "[a]ll that is said on a single subject is considered together." SEE: *Id*.

The jury should have been allowed to consider the statements or categories of statements that have been ruled defamatory within the context of the "general tenor of the entire work," which, from the title to the entire content of the article to the Liner Notes contained direct and otherwise implied references comparing Plaintiff to Burroughs. Since the publication connotes or asserts "objective facts" that are susceptible of being proved true or false, Plaintiff should have been permitted to show how and in what ways being compared to William S. Burroughs (within the context of trial testimony alleging Plaintiff is a "*heroin addict*") is false and defamatory. *Gold v. Harrison*, 88 Haw. 94, 101, 962 P.2d 353, 360 (1998); SEE also: *Fasi v. Gannet Co.,* 930 F. Supp. 1403, 1409 (D. Haw. 1995). Defendants' "statement[s] of opinion . . . may still be actionable 'if [they] impl[y] the

allegation of undisclosed defamatory facts as the basis for the opinion.'"
*Copp v. Paxton,* 45 Cal.App. 4th 829, 837 (52 Cal.Rptr.2d 831 (1996)).

If Pezman "believes" that Plaintiff has "*been sober for a year*" ("*one out of 40!*") and by this statement—falsely attributed to another speaker who not only did not say it but did not "believe" it to be true—and Johnson makes no less than seven (7) direct allusions to William S. Burroughs, his various character names and published works (all of which reference or otherwise allude to heroin and heroin addiction and extreme sexual deviancy), then Defendants "impl[y] a knowledge of facts which lead to the conclusion that" Plaintiff is a heroin addict (*i.e.* "*junkie*") and/or a homosexual pedophile.[18] *Milkovich v. Lorain Journal Co*., 497 U.S. 1, 18 [110 S.Ct. 2695, 111 L.Ed.2d 1] (1990). Defendants' statements however "erroneous" they are as reported in both the article and Liner Notes "may still imply a false assertion of fact." *Id*.[19]

---

[18] As to the homosexual connotations, it is equally plausible that Johnson is the one who harbors peculiar homosexual inclinations and that his obsession with or hostility and anger toward Plaintiff derive from the fact that Johnson either (a) represses such proclivities and is frustrated and confused or (b) resents that Plaintiff (in Johnson's view) ignores or rejects Johnson. SEE: Article at Pages 115 ("*He walked by me, without a word, like I wasn't there*") and 118 ("*El Hombre Invisible! He was standing less than four feet away and it was like I wasn't even there. I was so pissed off. I began to say something but didn't. It wasn't worth it anymore.*"). "*El Hombre Invisible*" is the main character in a book entitled "**QUEER**."

[19] SEE ALSO: Plaintiff's Trial Exhibit No. 12, where Johnson, in an email to his editor, explains in graphic detail just what he intended to mean by comparing Plaintiff to Burroughs: "*Owl is so much like Burroughs is* [sic] *weird*."

Evidence and testimony regarding the way the Defendants' material was written, edited, or presented regarding the Burroughs comparisons and the "heroin" allegations is relevant for such evidence and testimony may demonstrate the presence of knowledge of falsity. SEE: *Sprouse v. Clay Communications, Inc*., 211 S.E.2d 674 (W.VA. Ct. App. 1975), *cert. denied*, 423 U.S. 882, *reh'g denied*, 96 S. Ct. 406.

The RESTATMENT (SECOND) OF TORTS, § 563, Comment (c) states: "[D]efamatory imputation may be made by innuendo, by figure of speech, by expressions of belief, by allusion, or by irony or satire." SEE: *Cahill v. Hawaiian Paradise Park Corp., et al.,* 56 Haw. 522, 543 P.2d 1356 (1975): publication *"*must be considered as a whole in determining whether it would convey to the ordinary [reader] the defamatory meaning which plaintiffs, by innuendo, seek to place upon it" (at 527 – 28).

The defamatory implications of the Burroughs statements and "heroin" testimony should have been resolved in a manner that would do the greatest harm to Plaintiff as evidence of malice. SEE *Nader v. Toledano*, 408 A.2d 31 (D.C.App. 1979) at 54; *Rebozo v. Washington Post Co*., 637 F.2d 375 (5th Cir. 1981) at 382. Moreover, the defamatory meaning of the Article's title entails "words which are . . . reasonably susceptible to two meanings . . . by *innuendo.*" *Klaw v. New York Press Co*., 122 N.Y.S. 437,

438. SEE ALSO: *Hodges v. Oklahoma Journal Pub. Co.*, 4 Med. L. Rep. 2492, 2494 (Okl. App. 1979).

Where the title of the article compounded by several other Burroughs references—in concert with "heroin" testimony and evidence of Pezman's fabrication of the "sobriety" comment—raises defamatory implications of drug addiction not supported by the text of the published statements over which it appears, a libel verdict for Plaintiff should stand because of sufficient evidence that the headline was published with "actual malice." SEE: *Sprouse v. Clay Communications, Inc*., 211 S.E.2d 674 (W.VA. Ct. App. 1975), *cert. denied*, 423 U.S. 882, *reh'g denied*, 96 S. Ct. 406.[20]

"Some statements," like the Burroughs ones in this case, "are ambiguous and cannot be characterized as factual or nonfactual as a matter of law. 'In these circumstances, it is for a jury to determine whether a ordinary reader would have understood the article as a factual assertion . ." *Kahn v. Bower*, 232 Cal.App.3d 1599, 1608 [284 Cal.Rptr. 244] (1991); SEE ALSO: *Palm Springs Tennis Club v. Rangel*, 73 Cal.App.4th 1,5, [86 Cal.Rptr.2d 73] (1999) at p. 5; and *Slaughter v. Friedman*, 32 Cal.3d 149, 153-154 [185 Cal.Rptr. 244, 649 P.2d 886] (1982).

---

[20] SEE: Plaintiff's Trial Exhibit No. 18 @ Nos. 35 – 37; 42 – 46; 67 – 71; 80, etc.

When evaluating whether statements should be taken literally as statements of fact, the jury should have considered the "totality of circumstances" surrounding published statements. *Robel v. Roundup Corp*., 148 Wash.2d 35, 55, 59, P.3d 611 (2002) (citing *Dunlap v. Wayne*, 105 Was.2d 529, 539, 716 P.2d 842 (1986).

Thus, Plaintiff should have been afforded opportunity to prove his case using direct and indirect evidence. *Herbert v. Lando*, 441 U.S. 153 (1979) at 172. Objective evidence that is probative of either knowledge of falsity or reckless disregard for truth relates to the investigation conducted; interpretation of the material gathered; editing of the material; and the final presentation of the material. Sloppy investigating, biased interpretations and editing, and <u>sensational presentation</u> (e.g., **Burroughs**) have all been determined to be evidence of "actual malice." *Id*. SEE: *Brown v. Kelly Broadcasting Co*., 48 Cal.3d 711, 723 (257 Cal.Rptr. 708, 771 P.2d 406) (1989) ("malice has [also] been defined as 'a state of mind arising from hatred or ill will, evidencing a willingness to vex, annoy or injure another person'").

Evidence regarding Burroughs is clearly relevant and essential to understanding Defendants' "state of mind." When the quality of speech at issue is not of obvious or otherwise legitimate public concern and focuses

40

rather on the *private affairs* of a person, Defendants should be expected to conduct a sufficient and thorough prepublication investigation of apparently dubious information. SEE *Cantrell v. Forest City Publishing Co.*, 418 U.S. 245 (1974) at 247 – 48; cf. *Ben-Oliel v. Press Pub. Co.*, 251 N.Y. 250, 255, 167 N.E. 432 (1929); *Spence v. Funk*, 396 A.2d 967 [4 Med. L. Rep. 1981] (Del. 1978). That they did not is itself evidence of actual malice.

Evidence relating to Burroughs, his literary works and his reputation specifically pertains to Defendants' "state of mind," for such evidence and testimony bears directly on *their relative degrees of intentionality, awareness, and responsibility.* Such evidence is surely "relevant." SEE: FRE 401.

Evidence regarding Burroughs should have been considered within the "broad context" of the published statements as a whole, "which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work." SEE: *Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995); *Gold v. Harrison*, 88 Haw. 94, 101, 962 P.2d 353, 360 (1998) at 360.

### 5.    Fletcher's "*almost*" statement.

The court erred in eliminating the Fletcher "*almost*" comment, which not only reversed the Court's prior position, but is an error of law since the

"*almost*" statement clearly indicates a "material change or alteration in meaning" that, if known to the jury, would have a substantially different effect upon the "meaning" inferred from either the jury or reader.

The question is "whether the statement produces a different effect upon the reader than which would be produced by the literal truth of the matter." *Kohn v. West Hawaii Today, Inc*., 65 Haw. 584, 590, 656 P.2d 79, 83 (1982) at 84 (quoting *Gomba v. McLaughlin*, 504 P.2d 337, 339 (Colo. 1973)).

Pezman's deliberate "*alterations*" equate with knowledge of falsity for purposes of the actual malice requirement if such fabrication/alteration "results in a material change in the meaning conveyed by the statement." *Masson* v. *New Yorker Magazine, Inc.* 501, 510 U.S. 496 (1991) at 517.

Plaintiff either "*ran over Walter Hoffman right in front of* [Fletcher] *at Sunset*" or he didn't. Like hand grenades and pregnancy there is no "almost" when it comes to getting "run over."[21] However, the tape-recording does not confirm Pezman's false allegation. Defendant's statements are contradicted in material respects on Page 21, Lines 19 – 14 of the Transcript of the tape-recording. The evidence shows that Fletcher <u>does not confirm</u>

---

[21] To be sure, at every crowded surf spot in the world (like Sunset Beach), surfers are "*almost*" getting "*run over*" <u>all day long</u>—however, when a surfer *actually* runs over another surfer, that is an unusual and otherwise sensational event.

that he "*remember*[s] *Owl ran over*" anybody. No reasonable person could believe that Fletcher said what *Pezman says* he "said."

### 6.    The "authenticity" of Pezman's Tape-Recording.

The Court reversed itself again and was in an error since there is "clear and convincing evidence" that raises a "genuine issue of material fact" for a jury to consider as to the tape's authenticity. SEE: *Tagawa v. Maui Publ'g Co*., 50 Haw. 648, 652, 448 P.2d 337, 340 (1968) at 652.

Evidence shows that the recording appears to have been made in <u>2007</u> *after* the Magazine was published. Here there is a genuine issue of fact for a jury to consider regarding whether or not Pezman fabricated the quotations in the Liner Notes and tape-recorded Baxter and Fletcher <u>after</u> publication.

This issue is probative of actual malice. *Newton v. Nat'l Broad Co*., 930 F.2d 662, 669 (9th Cir. 1990) ("Only the existence of sufficient evidence to permit the conclusion that the defendant actually had a high degree of awareness of . . . probable falsity will suffice to meet the subjective test [of actual malice]"). Further, this issue relates to clear and convincing evidence upon which a reasonable fact-finder could find that Pezman knew that the statements in the Liner Notes were false.

It is evident from the beginning of the tape-recording until its end that Pezman is <u>leading</u> or otherwise <u>feeding</u> all the relevant and otherwise

defamatory information to his interlocutors. That Baxter is an illiterate drug addict—a settled fact on record—makes Pezman's thinly disguised charade all the more apparent. Pezman can plainly be heard telling Baxter to "[l]*isten to me and I'll __fill up your story.__*" (SEE: Transcript Page 2, line 15) Accordingly, Pezman deftly guides Baxter through the Liner Notes. Pezman <u>supplies</u> (i.e., "*fills*") Baxter with virtually *all* the material information that appears in the published statements.[22]

SEE Transcript, Page 3, lines 2- 4: Pezman: "*And, then, was, you know, So, that was like, ah, sixty . . . six? . . .*" Baxter: "*Sixty five, sixty six*"; Page 3, lines13-14: Pezman: "*Start coming down to the pier.*" Baxter: "*Start coming down to the pier*"; Page 4, lines 3-4: Pezman: "*And, how are he and Gary, ummmm, I mean.*" Baxter: "*Gary was, Gary was like the older brother*"; Page 4, lines 7-8: Pezman: "*And, so Owl was trying to keep up with . . .*" Baxter: "*He was keepin' up. Yeah*"; Page 4, lines 12-15: Pezman: "*. . . Plastic Fantastic . . .*" Baxter: "*Yeah. You know, Plastic Fantastic . . .*"; Page 4, lines 17-18: Pezman: "*Uh, yeah. By 5th street. No! 3rd street.*" Baxter: "*Yeah. 3rd street*"; Page 5, lines 3-4: Pezman: "*The yellow duplex, what?*" Baxter: "*The duplex, yeah*"; Page 5, lines 18-19: Pezman: "*Which was like '66.*" Baxter: "*Yeah. '66 . . .*"; Page 6, lines 5-12: Pezman: "*In, in*

---

[22] Of course, Pezman does not quote himself at all in the published statements—a factual inaccuracy that goes to the issue of actual malice.

*California*." Baxter: "*Yeah, in California*." Pezman: "*Cause Dick had to come over to California*." Baxter: "*Dick came over to California*." Pezman: "*To be the caper guru*." Baxter: "*To be shaper gu-ru*." Pezman: "*At Plastic*." Baxter: "*At Plastic . . .*"; Page 7, lines 1-2: Pezman: "*Which was unreal*." Baxter: "*Which was really unreal*"; Page 7, lines 10-11: Pezman "*So Owl, so Brewer was Owl, Owl, Brewer was Owl's mentor*." Baxter: "*That's right*"; Page 8, lines 6-7: Pezman: "*Coke bottle . . .*" Baxter: "*Coke bottle lenses*"; Page 9, lines 4-5: Pezman: "*Sometimes it was in front of people.*" Baxter: "*Well, he would drop in front of 'ya . . .*"; Page 9, lines 7-8: Pezman: "*I didn't know*." Baxter: "*I didn't know . . .*"; Page 9, lines 13-14: Pezman: "*Right. I think you believe that*." Baxter: "*I believe that . . .*"; Page 10, lines 19-20: Pezman: "*John Lennon glasses*." Baxter: "*John Lennon glasses*"; Page 11, lines 15-16: Pezman: "*Board shaper*." Baxter: "*Board shaper, yeah . . .*"; Page 11, lines 20-21: "*And they're hard to get*." Baxter: "*And they're hard to get . . .*" And so on.[23]

This tape-recording is **not** of a "conversation," much less an "interview"—it is clear and convincing evidence of Pezman's guile and deception. That the Court would prevaricate on this issue is at odds with the facts on record and is an error of law. Further, a cursory view to Page 12 of

---

[23] SEE ALSO, e.g., Transcript @ Page 13, lines 4, 8-9, 17-18; Page 14, lines 6-9, 13-19; Page 15, lines 2, 4-5, 8-9; Page 16, lines 9-10; Page 19, lines 12-13; Page 20, lines 19-22; Page 21, lines 1-4, 9-13.

the Transcript confirms the overarching point regarding the "authenticity" of

the tape's origin:

> [Pezman]: *How long's it been since you seen* [Plaintiff]?
>
> *A long time now.* {Line 4}
>
> . . . . .
>
> [Baxter]: "*Ahh, thirty seven years now, my*
>
> *son Josh was born, 1970.*" {Line 13}

The <u>evidence</u> is that Pezman's "interview" occurred in 2007. At

minimum, the question of "authenticity" raises genuine issues of material

fact for a jury to consider, indicating that: (a) Neither Baxter nor Fletcher

confirm the published statements; (b) The tape is fraudulent as of the time it

was supposedly made; (c) Pezman did not rely on it when *fabricating* his

publication; (d) Pezman published knowing falsities; (e) Pezman acted with

reckless disregard for truth.

Moreover, Pezman's behavior indicates a brazen act of fraud. *Kang v.*

*Harrington*, 59 Haw. 652; 587 P.2d 285 (1978) (re: false statements and

misrepresentations and non-disclosures); *Anderson v. Knox*, 297 F.2d 702,

711 (9th Cir. 1961); SEE also *Cooter & Gell v. Hartmarx Corp*., 496 U.S.

384, 110 S.Ct. 2447 (1990). The jury should have been, as a matter of law, instructed accordingly as to punitive damages.

### 7.   Evidence Regarding the Editorial Process.

Plaintiff should have been allowed to introduce probative evidence and elicit testimony regarding *Defendants' own prior publications*: written, authored and published by Pezman himself. SEE: *The Surfer's Journal,* Vol. 6, No. 1 1997 ("Liner Notes") re: the subject of "*Jeff Hakman's heroin addiction.*"

Such evidence is <u>relevant</u> and <u>essential</u> and would help the jury to understand Defendants' "state of mind" as well as helping to clarify the "editorial process" at the magazine. This evidence, moreover, would reveal actual and different practices from those claimed at trial regarding how Defendants handle reports of drug (specifically heroin) addiction. Precluding Plaintiff from introducing such evidence regarding Defendants' state of mind, while at the same time allowing Defendants' to refer to their own surfing publications (to show their state of mind), is a double standard and gross error of law.

Relevant here is the Supreme Court's emphasis on the increased examination of the *methodology* of journalists and the *attitude* of reporters and publishers have toward their newsgathering. SEE, e.g., *Herbert v.*

*Lando,* 441 U.S. 153 (1979) and *Tavoulareas v. Washington Post Co.,*
*Tavoulareas v. Piro*, 759 F.2d 90 *reh'g en banc granted* 763 F.2d 1472
(D.C. Cir. 1985), *rev'd*, 817 F.2d 762 (D.C. Cir. 1987). In light of their prior
reports, communications and conduct, Defendants' assertions and testimony
at trial could have been shown to be *implausible* and at odds with facts.
SEE*: Flowers v. Carville*, 310 F.3d 1118, 1131 (9th Cir. 2002).

Such evidence offered by Plaintiff on Defendants' fault in adequately
investigating the truth of the published statements (which TSJ Vol. 6, No. 1
plainly indicates) generally encompasses evidence of the falsity of the
matters asserted.  "[P]laintiff must focus on the editorial process and prove a
false publication attended by some degree of culpability." *Herbert v. Lando,*
441 U.S. 153, 176 (1979). SEE ALSO: *Philadelphia Newspapers, Inc. v.*
*Hepps,*  475 U.S. 767 (1986) at 776. Focusing on the editorial process is
essential to Plaintiff's case for this evidence shows that Pezman's testimony
and defense(s) are disingenuous, false and attended by evident culpability.
*Id.*

   **8.    Defendants *Own* Publications.**

Defendants should not have been permitted to use and refer to *their*
*own surfing publications* regarding Plaintiff's alleged drug and alcohol use
(Defs. Exhibits Nos. 310 – 315), precisely because Defendants published

such information and, absent such information and reports, they are unable to point to anything *independent* of their own essentially "bootstrapped" reports.

What "reputation" Plaintiff has that may be a matter of "public" or "general interest" in the eyes of the Defendants is the *creation* or *product* of the Defendants' own conduct. Evidence at trial shows that <u>Pezman published the "*I've got a lot of alcohol in me there*" quote</u>. (Defandants' Trial Exhibit No. 310) This demonstrates that whatever reputation Plaintiff may have (on the character issue Defendants made such a spectacle of for purposes of their "defense") is the <u>creation of Pezman himself</u>.

Such publications are not and cannot be considered to be "factual findings" within the meaning of Rule 803(8), Federal Rules of Evidence. SEE *Smith v. Ithaca Corp.*, 612 F. Supp. 215 (5th Cir. 1980). Defendants should have been precluded from introducing any evidence or testimony at trial regarding any publication <u>they published</u> that refers to Plaintiff's <u>alleged</u> drug-use or drug history on grounds that such publications are not only unfairly prejudicial. *Swanjian v. Gen. Motors Corp.*, 916 F.2d 31 (1st Cir. 1990).

These publications are unduly prejudicial since they are based on *unverified* or *unconfirmed* <u>hearsay</u>.[24] The jury should not have been misled or confused by information or evidence that is not merely untimely but, because it is based on unverified hearsay and was published by Pezman himself, is also unfairly prejudicial. *U.S. v. Universal Rehabilitation Services, Inc*., 205 F.3d 657 (3rd Cir. 2000). SEE: *Wolston v. Reader's Digest Ass'n, Inc.*, 99 S. Ct. 2701, 2709 [5 Med. L. Rep. 1273] (1979); *Khawar v. Globe International, Inc.* (1998) 19 Cal. Ct.App. 4th 254.

**9.      "Surfers: The Movie."**

Plaintiff should not have been precluded from introducing evidence and testimony regarding "<u>Surfers: The Movie</u>," as such evidence was essential and relevant to understanding Defendants' published statements within the context of the entire article, in addition to probing the Defendants' "state of mind." This is another example of the Court's "double standard" when it comes to the admissibility of evidence. The net effect put Plaintiff at a radical disadvantage and afforded Defendants an unfair and highly prejudicial advantage.

---

[24] <u>None</u> of the authors of Defendants' Trial Exhibits Nos. 313, 314, 315 (Jenkins, Doherty, or George) interviewed Plaintiff, nor did any of them check or verify the published information with Plaintiff. In the case of Sam George's article, two things can be shown (1) it is a republication of a prior story that Pezman published and (2) it is a pure fabrication with no basis in fact.

**10**.    **Including Extraneous and Irrelevant Pages From Defendants' Trial Exhibits.**

Defendants' Trial Exhibit No. 310 ("*Surfer Magazine*," Vol. 17, No. 1, 1976) should not have included all of the pages contained in that exhibit that were not specifically admitted into evidence at trial. Pezman referred to just one page (marked "D00607") out of a total of 22 (twenty two) pages. The other 21 pages were irrelevant to the jury's consideration of Pezman's testimony and served to allow the jury to consider extraneous materials. The inclusion of these extraneous pages implied that the statements in the articles should be considered for more than just Defendant's subjective state of mind.

The net effect of the inclusion of such irrelevant and extraneous material supports Plaintiff's view regarding the "double standard" as to the admissibility of evidence at trial, in that the Court apparently did everything that it could to maximize the impact of the negative "history" of Plaintiff (published by Defendants) to the detriment and disadvantage of Plaintiff. This was an abuse of the Court's discretion.

**IV.    CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Honorable Court to grant his motion for judgment as a matter of law and to grant him a new trial.

DATED:      Honolulu, Hawaii , March 14, 2009.

/s/ A.T. PhillipsII

_____

Arnold T. Phillips II
Attorney for Plaintiff

Of Counsel:
LAW OFFICE OF ARNOLD THIELENS PHILLIPS II
Attorneys at Law

ARNOLD THIELENS PHILLIPS #6640
1188 Bishop Street, Ste. 1404
Honolulu, Hawaii 96813
Telephone: (808) 528-3911/781-1414 Facsimile: (808) 528-5006
ATP@atphillips.com
Attorney for Plaintiff
CRAIG ELMER CHAPMAN

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| CRAIG ELMER CHAPMAN,<br><br>Plaintiff,<br><br>v.<br><br>JOURNAL CONCEPTS, INC. et al<br><br>Defendants. | CIVIL NO. CV07-00002 JMS/LEK<br><br>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5**<br><br><u>Non-Hearing Motion</u><br><br>Trial Date:  February 24, 2009 |

<u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.5</u>

I hereby certify pursuant to Local Rule 7.5 that the Memorandum In Support of Plaintiff's Revised Motion For Judgment as a Matter of Law and For a New Trial contains 8, 963 words of text, including footnotes, according to Microsoft Word's word count program.

53

DATED:     Honolulu, Hawaii March 14, 2009.


/s/  A. T. Phillips II
_____
          Arnold T. Phillips II
          Attorney for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| | CIVIL NO. CV07-00002 JMS/LEK |
| CRAIG ELMER CHAPMAN, | |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| | (Trial Date: February 24th , 2008) |
| JOURNAL CONCEPTS, INC. et al | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2009, a copy of the pleading, Plaintiff's  Revised Post-trial Motion was duly served upon the following at their last known address by hand delivering to the following address:

Mr. Jeffrey S. Portnoy, Esq., Mr. Elijah Yip, Esq.
Cades Schutte LLP
1000 Bishop Street Ste 1200
Honolulu, HI 96813
Attorneys for Defendants

DATED:  Honolulu, Hawaii, March 14, 2009.

/s/ A. T. Phillips
_____

Arnold T. Phillips II
Attorney for the Plaintiff