IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| CRAIG ELMER ("OWL") CHAPMAN, | ) ) ) | CIVIL NO.  07-00002 JMS/LEK |
| Plaintiff, | ) ) ) | ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW |
| vs. | ) ) | TRIAL |
| JOURNAL CONCEPTS, INC., A CALIFORNIA CORPORATION, d.b.a. THE SURFER'S JOURNAL; JEFF JOHNSON; and STEVE PEZMAN, | ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

## ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR NEW TRIAL

## I.  BACKGROUND

Craig Elmer "Owl" Chapman ("Plaintiff"), a well-known surfer and

surfboard shaper on the North Shore of Oahu, Hawaii, sued Journal Concepts, Inc.,

d.b.a., *The Surfer's Journal* ("Journal Concepts, Inc."), author Jeff Johnson

("Johnson"), and publisher Steve Pezman ("Pezman") for defamation based upon

the August/September 2006 issue of *The Surfer's Journal* ("Magazine").  The

Magazine included an article written by Johnson purportedly recounting his pursuit

of one of Plaintiff's custom-shaped single-fin surfboards ("Article") and Pezman's

editorial commentary on Plaintiff, which included quotes from two other surfers ("Liner Notes").

Only Plaintiff's defamation claims against Defendants Journal Concepts, Inc., Pezman, and Johnson (collectively, "Defendants") as to certain statements within the Article and Liner Notes (the "actionable statements") proceeded to trial on February 24, 2009.[1]  At the close of Plaintiff's case-in-chief, Defendants made a Rule 50 motion, which the court granted in part and denied in part.  At the end of the seven day jury trial, the jury returned a verdict for Defendants as to all of the remaining actionable statements.  Specifically, the jury found by a preponderance of the evidence that none of the actionable statements in the Article or Liner Notes was false.  *See* Doc. No. 315, Special Verdict Form for Defendant Jeff Johnson at 3 (Mar. 5, 2009); Doc. No. 316, Special Verdict Form for Defendant Steve Pezman and Journal Concepts, Inc. at 2 (Mar. 5, 2009).  Pursuant to the jury's verdict, judgment was entered in favor of Defendants on March 18, 2009.

---

[1]  For a detailed discussion of the factual and procedural background of this case prior to trial, see the court's November 7, 2007 Order Granting in Part and Denying in Part Defendants' Motion for Partial Summary Judgment ("November 7, 2007 Order"), *Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081 (D. Haw. 2007), and this court's December 24, 2008 Order (1) Granting in Part and Denying in Part Defendants' Motion for Summary Judgment and (2) Denying Plaintiff's Motion for Summary Judgment.  *Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353 (D. Haw. Dec. 24, 2008).

On March 14, 2009, Plaintiff filed a Revised Motion for Judgment as a Matter of Law and for New Trial ("Plaintiff's Motion").[2]  Defendants filed an Opposition on April 9, 2009.  Plaintiff filed a Reply on April 20, 2009.[3]

Plaintiff argues that he has a right to a new trial pursuant to Federal Rule of Civil Procedure 59 because the verdict is against the weight of the evidence, the court gave erroneous jury instructions and made a number of evidentiary errors, and the court erred by granting in part Defendants' Rule 50(a) Motion.  Plaintiff also claims that he is entitled to judgment as a matter of law pursuant to Rule 50(b) on the issues of defamation and actual malice.  Defendants counter that Plaintiff's request for a new trial should be denied because the jury's verdict is supported by substantial evidence and because the court made proper evidentiary rulings.  Defendants also maintain that the court correctly granted their Rule 50(a) motion and that Plaintiff is not entitled to a judgment as a matter of law under Rule 50(b) because he failed to make a Rule 50(a) motion before the case went to the jury.

---

[2]  Plaintiff withdrew his first Motion for Judgment as a Matter of Law and for a New Trial filed earlier on March 14, 2009.  Doc. No. 321.

[3]  Plaintiff filed two Replies on April 20, 2009, *see* Doc Nos. 329 and 330, but he withdrew the first one which was filed in error.  *See* Doc. No. 331.

For the foregoing reasons, the court DENIES Plaintiff's Motion.[4]

## II. <u>STANDARDS OF REVIEW</u>

**A.      Motion for a New Trial: Rule 59**

A motion for a new trial is governed by Rule 59, which provides in relevant part that "[t]he court may, on motion, grant a new trial on all or some of the issues -- and to any party -- as follows: (A) after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). While Rule 59 does not specify the grounds on which a motion for a new trial may be granted, "'the trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.'" *Shimko v. Guenther*, 505 F.3d 987, 992 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

A trial court may grant a new trial based upon insufficiency of the evidence "only if the jury's verdict was against the clear weight of the evidence." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1083 (9th Cir. 2009); *see also EEOC v. Pape Lift, Inc.*, 115 F.3d 676, 680 (9th Cir. 1997) ("A motion [for a new trial based on insufficiency of the evidence] will be granted . . . only if the

---

[4]  Pursuant to Local Rule 7.2(d), this Motion may be decided without oral argument.

verdict is against the great weight of the evidence, or it is quite clear that the jury

has reached a seriously erroneous result." (citations and quotation signals

omitted)).  A new trial may not be granted "simply because the court would have

arrived at a different verdict."  *Martin v. Cal. Dep't of Veterans Affairs*, 560 F.3d

1042, 1046 (9th Cir. 2009); *Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331

F.3d 735, 743 (9th Cir. 2003) (finding abuse of discretion where district court

"substitute[d] [its] evaluations for those of the jurors" in ordering new trial).

Where a motion for a new trial is based on an evidentiary error, a new

trial is warranted only if the erroneous admission of the evidence "substantially

prejudiced" a party.  *Ruvalcaba v. City of L.A.*, 64 F.3d 1323, 1328 (9th Cir. 1995);

*see also Martin*, 560 F.3d at 1046 (stating that Court of Appeals will not reverse a

district court's evidentiary rulings "in the absence of prejudice").

**B.      Motion for Judgment as a Matter of Law after Trial: Rule 50(b)**

"A jury's verdict must be upheld [against a motion for judgment as a

matter of law] if it is supported by substantial evidence."  *Wallace v. City of S.D.*,

479 F.3d 616, 624 (9th Cir. 2007).  "Substantial evidence is evidence adequate to

support the jury's conclusion, even if it is also possible to draw a contrary

conclusion from the same evidence."  *Id.* (citation and quotation signals omitted).

"The evidence must be viewed in the light most favorable to the nonmoving party,

5

and all reasonable inferences must be drawn in favor of that party." *Id.*

Rule 50 "requires a party seeking judgment as a matter of law to file a Rule 50(a) motion at any time before the case is submitted to the jury." *Tortu*, 556 F.3d at 1081.[5] If the court does not grant judgment as a matter of law pursuant to Rule 50(a) and "the jury later returns a verdict against the moving party, [that] party may then file a Rule 50(b) motion[.]" *Id.* Rule 50(b) states, in pertinent part:

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 10 days after the entry of judgment -- or if the motion addresses a jury issue not decided by a verdict, no later than 10 days after the jury was discharged -- the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59.

---

[5] Rule 50(a) states:
Judgment as a Matter of Law.
    (1) In General. If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
        (A) resolve the issue against the party; and
        (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.
    (2) Motion. A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

The Ninth Circuit "strictly construe[s] the procedural requirement of filing a Rule 50(a) motion before filing a Rule 50(b) motion." *Tortu*, 556 F.3d at 1082; *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 887 (9th Cir. 2002); *see also Image Technical Servs. v. Eastman Kodak Co.*, 125 F.3d 1195, 1212 (9th Cir. 1997) ("We strictly adhere to the requirements of Rule 50(b), which prohibit a party from moving for judgment as a matter of law after the jury's verdict unless that motion was first presented at the close of evidence.").  "As explicitly stated in the Rule, a Rule 50(b) motion may be considered *only* if a Rule 50(a) motion for judgment as a matter of law has been previously made." *Tortu*, 556 F.3d at 1081 (emphasis added).  If a party fails to make a motion for judgment as a matter of law under Rule 50(a) before the case is submitted to the jury, the court is "procedurally foreclosed" from entertaining a party's Rule 50(b) motion after trial.  *Id.* at 1083; *Wal-Mart Stores, Inc.*, 279 F.3d at 886-87; *see also Freud v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003) ("A party cannot raise arguments in its post-trial motion for judgment as a matter of law under Rule 50(b) that it did not raise in its pre-verdict Rule 50(a) motion.").

## III. ANALYSIS

### A.    Motion for a New Trial

Plaintiff argues that he is entitled to a new trial because (1) the verdict is against the clear weight of the evidence; (2) the court made various improper evidentiary rulings; (3) the court gave an erroneous instruction to the jury; (4) he showed that he was a private individual and was thus not subject to the heightened actual malice standard; and (5) the court erred in granting in part Defendants' Rule 50(a) motion.  The court addresses each of Plaintiff's arguments in turn.

### 1.    The Weight of the Evidence

Plaintiff argues that the verdict is against the clear weight of the evidence -- that is, the evidence and testimony demonstrated that Pezman and Johnson fabricated false statements and acted with actual malice.  *See* Pl.'s Mot. 13-14.  The court disagrees.

#### a.    Sufficiency of the evidence as to Johnson

Johnson testified that he ordered a surfboard from Plaintiff as described in the Article, that the quotes therein were true and accurate, and that when writing the Article he relied upon his journals containing notes taken as the events occurred in the mid-1990s.  Johnson testified that his journals were lost or destroyed when he moved from the North Shore to the mainland (prior to this

litigation), and that he no longer possessed the surfboard described in the Article. Johnson also testified that he spoke with other individuals quoted in the Article to verify their quotations.  Throughout his testimony, Johnson maintained that the Article contained the true story of his interactions ordering a board from Plaintiff and accurate quotes to Plaintiff and Hart.

Plaintiff's counsel had ample opportunity to cross-examine Johnson to test his credibility.  Plaintiff's counsel explored in detail the differences between Johnson's rough draft and the Article, the fact that Johnson lost his journals, that Johnson did not remember exactly when in the mid-1990s he ordered a board from Plaintiff, and that he no longer possesses the surfboard on which the Article is based.  Johnson also gave some contrary testimony -- he testified that he had not seen Plaintiff since sometime in the mid-1990s and later admitted that he interviewed him for an article on another surfer sometime in 2000.

Plaintiff testified that the story underlying the Article never happened -- that prior to this litigation, he had never met Johnson and certainly never made a board for him, was not on the North Shore during the summer in the mid-1990s because he had traveled to Japan, and vigorously maintained that Johnson fabricated the Article and all of the quotes therein.  Defense counsel cross-examined Plaintiff at length about his lack of knowledge of Johnson, including that

9

Johnson was a lifeguard at Sunset Beach in the mid-1990s and that Plaintiff has surfed Sunset Beach every week since he moved to the North Shore in the late 1960s.  Defense counsel also cross-examined Plaintiff about his trips to Japan, revealing that Plaintiff did not produce any proof of his trips to Japan in discovery.

Four witnesses testified on Plaintiff's behalf.  None of Plaintiff's witnesses, however, had personal knowledge of whether the actionable statements within the Article were true or false.  While Plaintiff's witnesses testified that Plaintiff was not in the habit of using the type of language in the quote attributed to him[6] and that, as a sound businessman and excellent surfboard shaper, he was unlikely to treat a customer as described in the Article, Plaintiff's witnesses could not confirm that Johnson never ordered a board from Plaintiff in the mid-1990s or testify as to whether Plaintiff or Hart made the statements as quoted in the Article.  In fact, not all of Plaintiff's witnesses testified to knowing him in the mid-1990s.

Considering all of the evidence and that the jury had the opportunity to view both Plaintiff and Johnson on the stand and judge their credibility during direct testimony and cross-examination, the court finds that the jury had sufficient evidence to support its finding that none of the actionable statements in the Article

---

[6] One of the three actionable statements in the Article was the following quote attributed to Plaintiff: "I'll tell you what, . . . guys will be runnin' from you on this thing.  Guys like Slater will be scratching just to get out of your way -- Slater!  Why does that little fucker even come here?"  Pl.'s Tr. Ex. P-8.

was false.  While the jury could have come to a different conclusion, it is not for the court to question the jury where its determination is not against the clear weight of the evidence.

Plaintiff repeatedly argues that the sum of the evidence as well as certain pieces of evidence clearly establish that the Article contains false statements -- for example, Plaintiff makes much of Johnson's "failure to investigate," Johnson's refusal to confirm the quotes attributable to Plaintiff with Plaintiff, the difference between Johnson's drafts and the final Article, and that Johnson lost the journals containing his original notes.  *See* Pl.'s Mot. 14, 16 n.1, 17-18, 20-21, 21 n.7, Pl.'s Reply 6.  These arguments, however, miss the point. The jury was free to believe Johnson rather than Plaintiff, and even though the jury *could* have found this evidence probative of falsity, it is obvious that -- after viewing all of the evidence and testimony -- the jury chose not to do so.

Because the jury's verdict against Johnson is not contrary to the clear weight of the evidence, Plaintiff is not entitled to a new trial based upon the insufficiency of the evidence as to Johnson.

   b. *Sufficiency of the evidence as to Pezman and Journal Concepts, Inc.*

The jury found that Pezman's quote attributed to Jackie Baxter ("Baxter") -- "I heard he's been sober for the last year.  One year out of 40?

11

(Laughing.)  That's good!  And I know firsthand" (the "sobriety statement") -- was not false, thereby finding in favor of Defendants Pezman and Journal Concepts, Inc.[7]  For the reasons set forth below, the court finds that this verdict was not contrary to the clear weight the evidence.

Pezman testified that he interviewed Baxter prior to the publication of the Liner Notes, and that he drafted the Liner Notes based on that interview, his own experience with Plaintiff, and from associating with surfers acquainted with Plaintiff.  Pezman admitted that the sobriety statement was not completely accurate -- he explained that he uttered the first half of the quote attributed to Baxter ("I heard he's been sober for the last year") and that Baxter replied, "One year of out of 40?  (Laughing.)  That's good!  And I know firsthand."  Pezman also testified that while he mistakenly misquoted Baxter, the general gist of the quotation was accurate.[8]  Pezman also testified that the audiotape of the Baxter interview (the "audiotape"), which was admitted into evidence and played for the jury, was a

---

[7]  The evidence presented as to Pezman, as co-publisher of *The Surfer's Journal*, an officer of Journal Concepts, Inc., and author of the Liner Notes, supports the verdict for Journal Concepts, Inc.

[8]  Pezman explained that he said, "I heard he's been sober for the last year" to Baxter because someone, in fact, told him that Plaintiff was sober for the last year prior to the interview, and that -- based upon his interactions with Plaintiff in the early 1970s, publications about Plaintiff that he read, and discussions with other surfers who knew Plaintiff -- he believed that statement referred to recovery from heroin addiction.

valid, pre-publication interview.[9]

Considering all of the testimony and evidence, the jury's verdict that the sobriety statement is not false is not contrary to the clear weight of the evidence.  To reach its verdict, the jury could have found *either* that the substance of the sobriety statement was not false (*i.e.*, that Plaintiff was only sober for one of the last forty years) *or* that the quote was not false (*i.e.*, Pezman accurately quoted Baxter).  Based on the audiotape of the Baxter interview and Pezman's testimony, the jury could easily conclude that the quote attributed to Baxter was substantially true.

Plaintiff's argument that because Pezman admitted that he misquoted Baxter in the sobriety statement -- specifically, that the first part of the quote contained his words and not Baxter's -- makes that statement "false" misstates the law and the evidence.  *See* Pl.'s Mot. 19 ("The 'sobriety' comment is not Baxter's statement and therefore it cannot be 'true' and must, accordingly, be false."); *see also* Pl.'s Reply 4-5.  "A statement is not false just because it is not literally true in every detail.  Minor inaccuracies in expression or detail do not amount to falsity so

---

[9] Pezman testified that prior to publication he confirmed the quote with Baxter by reading the Liner Notes to him because Baxter is illiterate.

13

long as the statement is true in substance."  Jury Instruction 21;[10] *see also Kohn v. West Haw. Today, Inc.*, 65 Haw. 584, 590, 656 P.2d 79, 83-84 (1982) (noting that substantial truth -- when "the substance, the gist, of the matter is true" -- is a defense to defamation); *Masson v. New York Magazine*, 501 U.S. 496, 517 (1991) ("Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified." (citation and quotation signals omitted)).  Although Pezman said the first sentence in the sobriety statement, Baxter replied "One year out of 40?  (Laughing.)  That's good!"  Given this context, the jury was certainly entitled to find that the gist of the sobriety statement was accurately portrayed by Pezman.  Considering all of the evidence, the jury could have properly found that the difference between the published quote did not materially differ from what Baxter told Pezman during the interview.[11]

---

[10]  The parties agreed to this jury instruction.

[11]  The remainder of Plaintiff's arguments that he is entitled to a new trial based upon the insufficiency of the evidence is unavailing.  Plaintiff argues that Defendants presented no corroborating non-party witnesses.  *See* Pl.'s Mot. 16 n.3, 20, Pl.'s Reply 4.  This is simply irrelevant -- Pezman and Johnson testified and presented evidence.  Nothing requires Defendants to present non-party witnesses.  Further, Plaintiff's conclusory assertion that "[t]here is no lawful reason to doubt the credibility of such non-party witness testimony" is wholly untrue.  *See* Pl.' Mot. 16 n.3.  As explained above, Defendants exposed the non-party witnesses' lack of personal knowledge on cross-examination and, while these witnesses were not parties to the litigation, they testified *on behalf* of Plaintiff.  Finally, this argument misses the point -- it is for the jury, not this court, to weigh the credibility of witnesses.

   Plaintiff also argues that the sum of the evidence shows that Pezman acted with actual malice.  *See* Pl.'s Mot. 13-19, Pl.'s Reply 5-6.  This argument, however, is moot because the jury -- finding that the actionable statements were not false -- never reached the issue of actual

(continued...)

Accordingly, Plaintiff has not put forth sufficient grounds for a new trial as to Defendants Pezman and Journal Concepts, Inc. based upon insufficiency of the evidence.

### 2.   *Evidentiary Rulings*

Plaintiff also asserts that he is entitled to a new trial because the court made various erroneous evidentiary rulings.  For the foregoing reasons, none of the challenged evidentiary rulings warrants granting a new trial.

### a.   *Reference to Plaintiff's heroin addiction*

Plaintiff argues that Defendants' reference to his heroin use during the trial was highly prejudicial and entitles him to a new trial.  *See* Pl.'s Mot. 25.

The court correctly ruled that evidence regarding Plaintiff's drug use -- including publications referencing Plaintiff's drug use and other out of court statements of which Pezman was aware prior to the publication of the Liner Notes -- was admissible because it was *highly probative* of Pezman's subjective state of mind and his substantial truth defense as to the sobriety statement.  That is, once Plaintiff alleged that the sobriety statement was defamatory, Pezman had every right to defend based on the substantial truth of the statement -- including that

---

[11](...continued)
malice.  *See* Doc. No. 315, Special Verdict Form for Defendant Jeff Johnson at 3 (Mar. 5, 2009); Doc. No. 316, Special Verdict Form for Defendant Steve Pezman and Journal Concepts, Inc. at 2 (Mar. 5, 2009).

Plaintiff was a long-term heroin user -- and to show that he did not act with actual malice.  Further, any potential prejudice was addressed by the court's limiting instruction.[12]

Plaintiff's emphasis on the fact that Pezman had no first hand knowledge of Plaintiff's heroin use (or similarly that he failed to conduct a rigorous investigation to confirm Plaintiff's heroin use) is wholly irrelevant.  *See* Pl.'s Mot. 27-31.  First, with regard to Pezman's actual malice defense, Pezman did not need to show that he had first hand knowledge of the Plaintiff's sobriety (or lack thereof), he merely had to show that he did not make the sobriety statement with a "high degree of awareness of [its] probable falsity."  *See Tagawa v. Maui Publ'g Co.*, 50 Haw. 648, 652, 448 P.2d 337, 340 (1968); *New York Times v. Sullivan*, 376 U.S. 254, 287-88 (1964).  Second, to the extent Plaintiff makes this argument to support his position that the evidence shows that Defendants acted with actual malice, that issue was not reached by the jury.[13]

Plaintiff separately argues that defense counsel's reference to

---

[12]  The court informed the jury that the out-of-court statements referencing Plaintiff's drug use (as opposed to Pezman's own knowledge) were not offered for their truth but for the limited purpose of demonstrating Pezman's state of mind when publishing the Liner Notes.

[13]  Plaintiff also makes a convoluted argument that it was error for the court "not to provide a limiting instruction regarding Defendants' so-called 'beliefs' in Plaintiff's alleged 'heroin addiction' since there is not sufficient basis for such beliefs."  *See* Pl.'s Mot. 27.  This argument is waived because Plaintiff never requested such an instruction during trial, and in any event, the evidence did not support giving such an instruction.

16

Plaintiff's heroin use constituted "misconduct" and was "highly prejudicial testimony" that supports his motion for a new trial. *See* Pl.'s Mot. 31. "To grant a new trial because of attorney misconduct, 'the flavor of the misconduct must [have] sufficiently permeate[d] [the] entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.'" *Larez v. City of L.A.*, 946 F.2d 630, 637 (9th Cir. 1991) (citation omitted). As explained above, defense counsel's reference to Plaintiff's heroin use was proper --in fact, Plaintiff's heroin use was key to his client's valid defense. Further, defense counsel had a sufficient basis for asking questions regarding Plaintiff's heroin use and referring to it in his closing based upon Pezman's testimony, the audiotape of the Baxter interview, and Plaintiff's admissions during trial. Defense counsel engaged in no misconduct.

Because no error was made by admitting evidence regarding Plaintiff's heroin use, no substantial prejudice resulted. Thus, Plaintiff is not entitled to a new trial on this ground.

> b.      *References to Burroughs, his reputation, and his literary works*

The Article contains several references to William S. Burroughs ("Burroughs"), his works, and his literary characters -- the title of the Article is "*El Hombre Invisible* (With apologies to William S. Burroughs)," Johnson describes

17

his experience in Plaintiff's shaping room as "*Naked Lunch* meets *Through the Looking Glass*," and Johnson refers to Plaintiff as "Old Bull Lee" and "*El Hombre Invisible*!" (twice).  Plaintiff argues that the pretrial ruling largely excluding reference to Burroughs, his reputation, and his literary works was in error and that Plaintiff should have been allowed to question Defendants regarding Burroughs once defense counsel opened the door to this material.[14]  As explained below, neither entitles Plaintiff to a new trial.

    1.  Pretrial ruling regarding Burroughs

    The court properly excluded most references to Burroughs and his literary works under Federal Rules of Evidence ("FRE") 401 and 403.  Considering that the references to Burroughs, his reputation, and his literary works are not actionable as defamation as a matter of law, *see Chapman v. Journal Concepts, Inc.*, 2008 WL 5381353, at *10 (D. Haw. Dec. 24, 2008), *and* that Plaintiff largely did not show that the evidence regarding Burroughs was necessary to put the actionable statements into context,[15] the court correctly concluded that references

---

  [14]  Plaintiff sought to introduce extensive evidence of Burroughs' life, reputation, and works -- including exploration of Burroughs' sexual orientation, drug addiction, and to present his novels (and a movie) in full.

  [15]  Plaintiff was allowed to reference the Burroughs material in a limited fashion -- specifically, Plaintiff was permitted to reference Burroughs, his works, or his characters to the extent they were located in the Article and may have implied that Plaintiff eluded Johnson after he ordered a board from him.  For example, Plaintiff's counsel could have questioned Plaintiff

                 (continued...)

to Burroughs and his literary works were not relevant under FRE 401 and, in any event, that exclusion of this evidence was required under FRE 403.[16]

The main thrust of Plaintiff's argument regarding the Burroughs material is that the court's refusal to admit this evidence prohibited him from proving that the actionable statements within the Article and Liner Notes were defamatory and made with actual malice.  *See* Pl.'s Mot. 35-41, Pl.'s Reply 13-16 ("The issue here is whether an 'average person' in the community would consider the Burroughs statements defamatory -- not what the Court wants to believe. . . .  A jury could find the Burroughs statements defamatory.").  The jury, however, never reached either of those issues because they found that the statements were *not false*.[17]

---

[15](...continued)
about the Article's reference to him as "*El Hombre Invisible*!" after he mysteriously disappeared into Foodland.  *See* Pl.'s Tr. Ex. P-8.

[16]  Because the references to Burroughs in the Article were not capable of defamation, to allow Plaintiff to explain the scandalous details of Burroughs' life and the nuances of Burroughs' works would have added no probative value while risking serious prejudice to Defendants, confusion of the jury, and certain undue delay.  On balance, this evidence was not admissible under FRE 401 and 403.

[17]  While Plaintiff baldly asserts that the Burroughs evidence "demonstrate[s] the presence of knowledge of falsity," he does not support that claim with either logic or evidence.  Put differently, Plaintiff completely fails to explain how presenting evidence to the jury of Burroughs' offbeat lifestyle or his novel *Naked Lunch*, for example, would have supported an inference that the actionable statements about *him* were false.  *See* Pl.'s Mot. 38.

Thus, omission of this evidence was neither erroneous nor prejudicial and, therefore, not grounds for a new trial.

### 2.   Opening the door

Plaintiff also bases his Motion for a New Trial on defense counsel's opening the door to the Burroughs material and the court's subsequent evidentiary rulings.

During cross examination, defense counsel asked Plaintiff a convoluted question regarding Plaintiff's feelings about Johnson by quoting one of Plaintiff's interrogatory answers.  Although the interrogatory answer made a reference to Burroughs, defense counsel omitted the Burroughs reference from his question.  *See* Defs.' Trial Ex. No. 332, 73 n.22.[18]  Because the question delved into the previously excluded Burroughs material, the court found that Defendants had opened the door as to *Plaintiff's* understanding of Burroughs and his works to the extent it influenced his interrogatory answer and thus allowed Plaintiff's

_____

[18]  The relevant portion of the interrogatory response states:

> Given [Johnson's] otherwise apparent psychosexual inclinations and desires -- latent or not (which are otherwise betrayed by the repeated, indeed compulsive, references in The Article to William S. Burroughs and his various aliases, etc. . . .), it could be readily shown that [Johnson's] resentment or malice derives, at least in part, from his feelings of rejection and/or hostility as regards [Plaintiff] who did not (indeed could not, because he could not have been aware) return [Johnson's] obsessive affections.

Defs.' Trial Ex. 332, at 73 n.22.

20

counsel to question Plaintiff on this limited issue during re-direct.  Plaintiff's

counsel, however, declined to question Plaintiff on this material.  Accordingly,

Plaintiff has waived any objection based on any prejudice that may have flowed

from defense counsel's reference to Plaintiff's interrogatory.  In other words,

Plaintiff cannot maintain that the court is to blame for "hav[ing] the Plaintiff tarred

with the brush of this question," *see* Pl.'s Mot. 33, when Plaintiff did not object to

the question when asked and subsequently declined the court's offer to explain

defense counsel's admittedly "bizarre" question.

Instead, Plaintiff attempted to re-call Johnson to ask him about his

understanding of Burroughs and his works, but the court refused to allow that

testimony.  While defense counsel's question opened the door to *Plaintiff's*

impressions of Burroughs, it did not open the door to *Johnson's* knowledge and

impression of Burroughs and his works.  Considering the lack of probative value of

the Burroughs material and the significant likelihood of prejudice and confusion if

this testimony were allowed, the court correctly ruled that allowing Plaintiff's

counsel to question Johnson as to his understanding of Burroughs would have run

afoul of FRE 401 and 403.[19]

---

[19]  Plaintiff's argument that "[i]t was an inequitable double standard to permit Pezman and Defendants' counsel" to refer to heroin and "deny Plaintiff his right to explore Defendants' state of mind" regarding Burroughs is completely meritless.  *See* Pl.'s Mot. 34.  The

(continued...)

In sum, the evidentiary rulings regarding Burroughs prior to and during trial were both proper.[20]

### c.   *Evidence regarding the editorial process*

Plaintiff claims that it was error for the court to refuse to admit evidence regarding the editorial process -- specifically for the court to prohibit Plaintiff's counsel from questioning Pezman on a 1997 article featuring Jeff Hackman's heroin addiction.  *See* Pl.'s Mot. 47.  This ruling was proper.

The court correctly excluded testimony regarding Pezman's investigation into a completely unrelated article, published nine years prior to the Article, about a person wholly separate to these proceedings as irrelevant and likely to lead to confusion under FRE 403.  Additionally, to the extent that Plaintiff would have relied on this evidence to demonstrate reckless disregard, this argument is rendered moot by the jury's finding that the statements were not false.

---

[19](...continued)
admissibility of one has nothing to do with the other -- as established above, evidence regarding Plaintiff's heroin use was relevant to the substantial truth of and Defendant's state of mind regarding the sobriety statement and evidence regarding Burroughs was barred by FRE 401 and 403.  Further, there was no double standard as both Plaintiff and Defendants were prohibited from introducing extraneous evidence regarding Burroughs.  Finally, after defense counsel opened the door, Plaintiff's counsel declined the opportunity to ask Plaintiff to explain *his* understanding of Burroughs and his published works.

[20]  To the extent Plaintiff maintains that the Burroughs material was probative of actual malice and that the actionable statements were defamatory, *see* Pl.'s Mot. 34-41, exclusion of this evidence was harmless because the jury never reached those two issues.

In sum, exclusion of this evidence was proper and did not prejudice Plaintiff and, therefore, is not an adequate basis for a new trial.

### d.   *Defendants' publications*

Plaintiff argues that Defendants' publications discussing Plaintiff's drug and alcohol use were inadmissable hearsay and unfairly prejudicial.  *See* Pl.'s Mot. 48-50.

As explained above, these publications are not hearsay because they were admitted for the *limited purpose* of demonstrating Pezman's subjective state of mind.  Additionally, FRE 403 did not bar admission of the publications because evidence of Defendants' knowledge of Plaintiff's drug use was highly relevant to Pezman's state of mind and the quantum of damages such that any prejudice to Plaintiff did not outweigh its probative value.  Additionally, the court gave a limiting instruction to deal with any potential prejudice.[21]  Thus, admission of this evidence was proper and is not grounds for a new trial.

---

[21]  Plaintiff's argument that Defendants "own surfing publications" should have been excluded simply because Defendants published them (or had a role in publishing them) is utterly unavailing.  *See* Pl.'s Mot. 48-49.  Of course, those charged with defamation cannot create their own defense by republishing their own potentially defamatory report.  *See World Wide Assoc. v. Pure, Inc.*, 450 F.3d 1132, 1138 (10th Cir. 2006).  But where Plaintiff has drawn no nexus between Defendants' prior publications referring to Plaintiff's drug use and the current publication at issue, Defendants' prior publications are admissible.  *See Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081, 1094 n.4 (D. Haw. 2007).

### e. *Surfer's The Movie*

Plaintiff argues that it was error to prohibit him from introducing *Surfer's The Movie* into evidence because it was essential to show Defendants' state of mind. *See* Pl.'s Mot. 50.

The court correctly excluded this evidence on Defendants' hearsay objection. *Surfer's The Movie* contained a short clip of Plaintiff stating that he does not "drop in"[22] on other surfers but instead "give[s] a wave" -- which was an out-of-court statement offered for the truth of the matter asserted. Further, the clip was cumulative of Plaintiff's testimony that he is not in the habit of "dropping in" on other surfers. Exclusion of this evidence, therefore, was neither erroneous nor prejudicial to Plaintiff and cannot serve as a basis for a new trial.[23]

### f. *Defendants' trial exhibit 310*

Plaintiff argues that introducing all twenty-two pages of Defendants' trial exhibit 310 was error because Pezman only referred to one page in his

---

[22] "Dropping in" is the act of taking off on a wave in front of another surfer who is closer to the curl, and thus thought of as having first claim to the wave.

[23] Plaintiff complains that exclusion of this evidence "is another example of the Court's 'double standard' when it comes to the admissibility of evidence." *See* Pl.'s Mot 50. Plaintiff misunderstands defamation law and the Federal Rules of Evidence -- a defamation plaintiff cannot complain regarding admission of defendant's knowledge of a plaintiff's prior history to show a defendant's state of mind as it relates to an actual malice defense. Put differently, there is absolutely nothing improper in a defamation defendant testifying as to the reasons why he believed in the truth of the statement he published or explaining what he meant by the challenged statement.

testimony.  *See* Pl.'s Mot. 51; Defs.' Tr. Ex. 310.  On cross examination, however,

Plaintiff asked questions about additional pages in the exhibit.  In the interest of

fairness and completeness, the court agreed to admit the exhibit in its entirety.

Because admission of this exhibit was not error, Plaintiff is not entitled to a new

trial on this ground.

### 3. *Instruction to the Jury*

Plaintiff also bases his argument for a new trial upon his assertion that

it was error for the court not to instruct the jury that "the quality of an investigation

into libelous charges before publishing is key to determining whether the material

was published with reckless disregard."  *See* Pl.'s Mot. 27.

The actual malice instruction provided to the jury covered

investigation in publishing:

> [r]eckless conduct is not measured by whether a
> reasonably prudent man would have published, or would
> have investigated before publishing.  There must be
> sufficient evidence to permit the conclusion that the
> Defendant in fact entertained serious doubts as to the
> truth of his publication.  A Defendant's failure to
> investigate before publishing a statement only amounts to
> 'actual malice' if that Defendant had a high degree of
> awareness that the statement is probably false.

This instruction was proper.  A defendant's failure to investigate

before publishing a statement only amounts to "actual malice" (or as Plaintiff

25

states, is only "key to determining whether the material was published with

reckless disregard") if that defendant had a high degree of awareness that the

statement was probably false.  *See Tagawa*, 50 Haw. at 652, 448 P.2d at 340 ("An

investigatory failure alone . . . , without a high degree of awareness of probable

falsity may raise the issue of negligence but not the issue of 'actual malice.'");

*Fong v. Merena*, 66 Haw. 72, 74, 655 P.2d 875, 876-77 (1982) (noting that "mere

investigatory failure [does not] provide sufficient support for a finding of malice");

*see also St. Amant v. Thompson*, 390 U.S. 727, 733 (1968) ("Failure to investigate

does not in itself establish bad faith."); *New York Times v. Sullivan*, 376 U.S. at

287-88 (finding no actual malice for investigatory failure where *Times* employees

disclaimed any knowledge of falsity in sworn testimony).  Further, even if this

instruction were in error, this argument is moot because the jury never reached the

issue of actual malice -- that is, a new trial is not required because this instruction

was harmless.  *See Martin*, 560 F.3d at 1046 (noting that reversal based on a

challenge to a jury instruction is "not required 'if the error was more probable than

not harmless.'" (citation omitted)).

     This court, therefore, may not grant a new trial on this basis.

### 4.    *Plaintiff as a Private Individual*

Plaintiff argues that at the end of trial the court should have found that, as a matter of law, Plaintiff is a private individual.  *See* Pl.'s Mot. 22-25, Pl.'s Reply 6-11.  Although not entirely clear, its appears that Plaintiff makes this argument in support of his motion for a new trial because it "constitutes a manifest injustice."  *See* Pl.'s Reply 7.

Even if the court's November 7, 2007 Order finding that Plaintiff is a public figure was in error, no miscarriage of justice resulted because the jury found that the statements at issue were not false, and thus never reached the issue of actual malice.[24]  *See Shimko*, 505 F.3d at 993 ("[T]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice.").  In other words, Plaintiff's status as a public figure -- subjecting him to the heightened actual malice standard -- was harmless.  Thus, Plaintiff is not entitled to a new trial on this basis.[25]

_____

[24]  In any event, the November 7, 2007 Order holding that Plaintiff is a public figure was correctly decided for the reasons articulated therein.  *See Chapman v. Journal Concepts, Inc.*, 528 F. Supp. 2d 1081 (D. Haw. 2007).  Further, contrary to Plaintiff's assertion that the trial proved Plaintiff was a private individual, *see* Pl.'s Mot. 22-25, Pl.'s Reply 7, more evidence of Plaintiff's pubic figure status surfaced during the trial that was previously unknown to the court.

[25]  To the extent that Plaintiff makes this argument in support of his Rule 50(b) motion, he is "procedurally foreclosed" from making this argument because he did not move for

(continued...)

5.      **Defendants' Rule 50(a) Motion**

In support of his motion for a new trial, Plaintiff argues that the court

erred by granting in part Defendants' Rule 50 motion -- asserting that the

references in the Liner Notes to Plaintiff "dropping in" attributed to Baxter and

Herbie Fletcher ("Fletcher")[26] should have been sent to the jury.[27]

"'Judgment as a matter of law [under Rule 50(a)] is proper when the

evidence permits a reasonable jury to reach only one conclusion.'"  *Martin*, 560

F.3d at 1046 (quoting *Quicksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 755 (9th

Cir. 2006)); *Torres v. City of L.A.*, 548 F.3d 1197, 1205 (9th Cir. 2008) ("Judgment

as a matter of law is appropriate when the evidence presented at trial permits only

one reasonable conclusion." (citation and quotation signals omitted)).  Put

---

[25](...continued)
judgment as a matter of law at the close of trial.  *See Tortu v. Las Vegas Metro. Police Dept.*, 556 F.3d 1075, 1083 (9th Cir. 2009); *Janes v. Wal-Mart Stores, Inc.*, 279 F.3d 883, 887 (9th Cir. 2002).

[26]  The Liner Notes attribute the following quote to Baxter -- "He'd just drop in and go for it, which sometimes caused bad energy in the water because he couldn't see you.  You'd already be in the spot, and he'd drop right in front of you" ("Baxter's 'dropping in' quote").  The Liner Notes attribute the following quote to Fletcher -- "I remember Owl ran over Walter Hoffman right in front of me at Sunset he was so blind.  Walt turned turtle going up the face, and Owl just took off and went right over the top of him" ("Fletcher's 'ran over' quote") (collectively, the "'dropping in' quotes").

[27]  To the extent that Plaintiff makes this argument in support of his Rule 50(b) motion, he is "procedurally foreclosed" from making this argument because he did not move for judgment as a matter of law at the close of trial.  *See Tortu*, 556 F.3d at 1083; *Wal-Mart Stores, Inc.*, 279 F.3d at 887.

differently, "[a] motion for a judgment as a matter of law is properly granted only if no reasonable juror could find in the non-moving party's favor" viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in favor of that party.  *Torres*, 548 F.3d at 1205 (citation and quotation signals omitted).

At trial, Plaintiff's argument that the "dropping in" quotes attributed to Baxter and Fletcher constituted defamation hinged upon his assertion that the audiotaped interview of Baxter and Fletcher was *not* a valid pre-publication interview.  In other words, in order to prove the elements falsity (*i.e.*, that Baxter and Fletcher did not make the statements as quoted) and of actual malice (*i.e.*, that Pezman published the "dropping in" quotes with knowledge that the quotes were false), Plaintiff argued that Pezman recorded the audiotape *after* the Liner Notes were printed.

Plaintiff bases his fabrication argument on the following portion of the audiotape:

| | |
|---|---|
| Pezman: | And how did Owl just got [sic] hung up in a time warp on the North Shore and never left it? |
| Baxter: | Ahh, thirty, 37 years now.  My son Josh was born in 1970. |

Pl.'s Tr. Ex. P-1.  Plaintiff asserted that this portion of the audiotape establishes

29

that it was made in 2007 -- after the 2006 Liner Notes were printed -- because Baxter states 37 years have passed since his son was born in 1970.

Due to the consistency between the Liner Notes and the audiotape, to believe that the audiotape was recorded in 2007 a reasonable jury would have to conclude that the Baxter and Fletcher interviews were *entirely scripted*. After carefully reviewing all of the evidence, the court properly found that evidence of fabrication was so feeble that no reasonable juror could come to that conclusion. First, the intonation of Baxter's statement regarding his son's birth did not indicate an affirmative statement that the audiotape was made in 2007 -- instead, his tone was contemplative, indicating that he was thinking through the answer and time frame of the question. Second, because Baxter is illiterate, he could not read from a script. To craft an interview as *similar* to the Liner Notes as the audiotape is would have required Pezman (or someone) to recite every word to Baxter aloud and have him repeat it back. Although Pezman does lead at times, the audiotape does not indicate that Pezman (or anyone else) was feeding Baxter his lines -- instead the audiotape sounds like an extremely contemporaneous, off-the-cuff, in-the-moment conversation between Pezman and Baxter. Further, Plaintiff did not present any evidence that the tape contains any breaks in recording during the Baxter interview. Thus, considering all of the evidence presented, the court

30

appropriately ruled that no reasonable jury could have found that the audiotape was recorded *after* the Liner Notes were published.

Accordingly, Plaintiff could only proceed to the jury on his defamation claim as to the "dropping in" quotes if he could demonstrate that Pezman's alteration of each quoted statement resulted "in a material change in the meaning conveyed by the statement." *See Masson*, 501 U.S. at 518.  Applying *Masson*, the court examined both Baxter's "dropping in" statement and Fletcher's "ran over" statement and found that neither of the statements in the Liner Notes materially differed in meaning from the statements on the audiotape to create an issue of fact for the jury. *See id.* at 521-28.[28]  Thus, judgment as a matter of law as to these "dropping in" statements was proper because the evidence permitted a reasonable jury to reach only one conclusion -- that Plaintiff had not shown either falsity or actual malice as to these statements. *See Martin*, 560 F.3d at 1046.

Accordingly, there was no error in granting Defendants' Rule 50(a) Motion and this ruling does not serve as a basis for a new trial.

---

[28]  Plaintiff's argument that Fletcher's "almost" ran over statement is materially different from the "ran over" statement in the Liner Notes lacks merit. *See* Pl.'s Mot. 41-43.  In *Masson*, the Supreme Court found that any difference between plaintiff's tape-recorded statement that he changed his name because he "just liked" the name and the quotation that "it sounded better" was immaterial.  501 U.S. at 523.  Similarly, Fletcher's statement in the audiotape that Plaintiff "almost" ran over Walter Hoffman does not materially differ from the statement that he "ran over" Walter Hoffman.

Having found that the verdict is not against the clear weight of the evidence against any Defendant, that the evidentiary rulings, jury instructions, and Rule 50(a) ruling were proper, and that the jury did not reach an erroneous result, the court DENIES Plaintiff's Motion for a New Trial.

## B.    Plaintiff's Rule 50(b) Motion

Plaintiff argues that he is entitled to judgment as a matter of law on the issues of defamation and actual malice.  Pl.'s Mot. 12.  Plaintiff, however, failed to move for a judgment as a matter of law at the end of trial.

Because Plaintiff failed to move for judgment as a matter of law before the verdict was submitted to the jury, the court is "procedurally foreclosed" from entertaining Plaintiff's Rule 50(b) Motion.  *See Tortu*, 556 F.3d at 1083; *Wal-Mart Stores, Inc.*, 279 F.3d at 886-87.[29]  Thus, the court DENIES Plaintiff's Motion for Judgment as a Matter of Law.

///

///

///

///

---

[29]  Considering that the jury's verdict is supported by substantial evidence and that the evidentiary rulings challenged by Plaintiff were sound, if the court were permitted to entertain Plaintiff's Rule 50(b) Motion, the court would nonetheless deny it.

## IV.  **CONCLUSION**

Based on the above, the court DENIES Plaintiff's Motion.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, June 3, 2009.



```
 /s/ J. Michael Seabright
J. Michael Seabright
United States District Judge
```

*Chapman v. Journal Concepts, Inc., et al.*, Civ. No. 07-00002 JMS/LEK, Order Denying Plaintiff's Motion for Judgment as a Matter of Law and for New Trial